229 N.J. Super. 295 (1988)
551 A.2d 535
EDWARD FINNEY, ET AL, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
REN-BAR, INC., A NEW JERSEY CORPORATION TRADING AS "POOR MIKE'S," RENE BARTOLI, TRADING AS "POOR MIKE'S," DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND PEARLINE THOMAS, GEORGE THOMAS, ET AL, DEFENDANTS-RESPONDENTS. MARYELLA THOMAS, ET AL, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
REN-BAR INC., A NEW JERSEY CORPORATION TRADING AS "POOR MIKE'S," RENE BARTOLI, TRADING AS "POOR MIKE'S," DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND PEARLINE THOMAS, GEORGE THOMAS, ET AL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1988.
Decided December 13, 1988.
*296 Before Judges KING, BRODY and ASHBEY.
Stephen G. Sweet argued the cause for appellant cross-respondent (Methfessel & Werble, attorneys; Stephen G. Sweet, on the brief).
Paul E. Newell argued the cause for respondents cross-appellants Finney (Newell & Mahany, attorneys; Paul E. Newell, on the brief).
Herbert Lawrence argued the cause for respondents cross-appellants Maryella Thomas (Lawrence and Kapalko, attorneys; Herbert Lawrence, on the brief).
Douglas S. Brierley argued the cause for respondent George Thomas (Schenck, Price, Smith & King, attorneys; Donald W. Bedell, of counsel; John M. DeMarco and Douglas S. Brierley, on the brief).
Wolff, Helies & Duggan filed a statement for respondent Township of Neptune in lieu of brief.
The opinion of the court was delivered by ASHBEY, J.A.D.
This is a dram shop case. The question is whether it is foreseeable to a tavern serving alcohol to an underage drinker *297 that fire-related death and injuries will proximately result. Defendants Ren-Bar, its owner Rene Bartoli, (collectively the tavern or Poor Mike's) appeal from verdicts in plaintiffs' favor for compensatory and punitive damages. Plaintiffs cross-appeal from a post-trial order which vacated the awards for punitive damages. Separately, plaintiff Maryella Thomas cross-appeals from a trial court ruling which removed from the jury consideration of her claim on behalf of Nicole Thomas.[1] We affirm.
Plaintiffs represent members of the same family. They were living together in a house which burned to the ground. Defendant George Thomas was also a member of the family, and assertedly responsible for the fire. Plaintiffs claimed that George, under the legal age to drink, had been served alcohol by defendant tavern, had become intoxicated, and had negligently set the house on fire. The jury concluded that George was 25% responsible for the fire and that defendant tavern was 75% responsible. Poor Mike's challenges the ensuing judgments and the denial of its motion for a new trial.
The fire occurred in the early hours of March 10, 1985. It resulted in the deaths of two small children, Melvin and Nicole *298 Thomas, their 16 year old uncle, Michael Thomas, and 46 year old aunt, Mildred Finney. Woodie Thomas, Michael's brother, survived the fire, but suffered burns. Much of the evidence concerned how the fire occurred. Plaintiffs contended that George left a pot of cooking oil burning on the stove after he came in late after drinking at Poor Mike's.
Maryella Thomas, George's sister, testified that a pot of oil had been used earlier in the evening and been placed on a back burner to cool. No one was cooking when she went to bed on the first floor before George came home. After George came in, Maryella was asleep and was awakened by the smoke and flames. She "jumped up and went into the kitchen cautiously because the door frame leading to the kitchen was on fire." "I saw a pot on the stove on fire." "[a]ll I saw was the grease in the pot and the grease on fire, ... and the burner on fire.... the cabinets were catching on fire back of the stove.... [the fire] was heading into the dining room all along the walls, the ceiling." She threw some water on the fire which made it worse. Maryella said that after the fire George admitted he had been cooking; he was watching television and had fallen asleep. George's brother, Woodie, testified that George admitted he was cooking before the fire, he wasn't sure if he turned off the stove, and he fell asleep. George's brother, Willie, also testified that George wasn't quite sure whether he was cooking when he came home.
Officer Calderone testified that he saw flame on top of the stove in the kitchen and observed that it involved the cabinets directly over the stove. Lt. Dispensiere took extensive color slides of the fire scene. He also inspected the stove top and the left rear burner (where the pot had melted) and found it in the full "on" position. Lt. Dispensiere testified that the electrical system, the gas system and other potential causes of the fire were in working order.
George testified that on the evening of March 9, 1985 some time after 9 p.m., he arrived at Poor Mike's. He was working *299 as an assistant to the disc jockey. He only had one sip of beer which was given to him by someone he could not identify. He denied that he turned on the stove and denied that he had ever admitted to anyone that he had been cooking. George admitted that Sally Todd was a bartender at Poor Mike's that night. According to Todd's deposition, she served two drinks to George, a beer and a double shot of rum. She did not require him to produce any proof of age. She had seen George at Poor Mike's drinking, on previous occasions. Maryella testified that she believed that George was under the influence of alcohol. He was difficult to rouse. Officer Calderone, when he arrived at the fire scene, observed that George's speech was "slurred" and that, he appeared to be "sort of dazed. Maybe groggy." Seth Cunningham testified that he was in the bar and personally saw George purchase and consume several rum and cokes accompanied by several beers. The tavern offered no contrary testimony.
The jury was instructed that
Plaintiffs here may recover from a tavern owner if they show by a preponderance of the evidence that Poor Mike's negligently served George Thomas intoxicating beverages when he was underage. That at the time of the service Poor Mike's knew or should have known from the circumstances that George Thomas was underage or an apparent minor and that the service of the alcoholic beverages was a proximate cause, that is a substantial factor in causing the fire and the injuries resulting from it.
* * * * * * * *
The Division of Alcoholic Beverage Control pursuant to authority granted by statute has adopted a regulation, 13:2-23.1, which provides in pertinent part as follows. "No licensee shall sell, serve, deliver, or allow, permit, or suffer the sale, service, or delivery of any alcoholic beverage directly or indirectly to any person under the legal age to purchase or consume alcoholic beverages or allow, permit, or suffer the consumption of any alcoholic beverage by any such person in or upon the licensed premises".
That regulation pursuant to statute establishes a standard of conduct for tavern owners. The law is designed not only to protect the patrons who are apparent minors but also to protect members of the public from foreseeable risk of injury.
If you find that the defendants Ren-Bar and Renee Bartoli who traded as Poor Mike's have violated that standard of conduct, such violation is evidence to *300 be considered by you in determining whether negligence as I have defined that term has been established.
Standard jury instructions respecting proximate cause were also given. The questions which the jury answered affirmatively were:
Was defendant George Thomas negligent in attempting to cook food on March 10, 1985?
Was the negligence a proximate cause of the fire?
Was defendant George Thomas served alcoholic beverages at defendant Poor Mike's on March 9th or March 10, 1985?
Did defendant Poor Mike's know or should Poor Mike's have known that defendant George Thomas was underage for the service of alcoholic beverages?
Was defendant Poor Mike's negligent in serving alcoholic beverage to defendant George Thomas on March 9th or 10, 1985?
Was the negligence a proximate cause of the fire?
Was defendant George Thomas intoxicated on March 10, 1985?
Was that intoxication a proximate cause of the fire?[2]
Defendant tavern essentially concedes that the jury could have found that Poor Mike's served George alcohol but contends that as a matter of law the fire may not be considered foreseeable or its conduct the proximate cause of the deaths and injuries suffered by the Thomas family. When she denied defendant's motion for a new trial, the judge said that, to a tavern serving liquor to an underage person, it was reasonably foreseeable that some injury would result, and that this injury was neither a bizarre nor attenuated result of the tavern's conduct. In this analysis she relied on Rappaport v. Nichols, 31 N.J. 188 (1959), the leading case, not only on tavern liability, also involving service of alcohol to a minor. She concluded that while Rappaport emphasized motor vehicle accidents and barroom brawls, nothing in that case or in subsequent cases mandated that only this type of result was foreseeable to a tavern selling alcohol to persons not legally able to drink. As she noted, the Rappaport Court emphasized "[the] very special *301 susceptibilities and the intensification of the otherwise inherent dangers when persons lacking in maturity and responsibility partake of alcoholic beverages." 31 N.J. at 201.
Our standard of appellate review concerning a motion for a new trial is whether there was a miscarriage of justice. Dolson v. Anastasia, 55 N.J. 2, 6 (1969); Pressler, Current N.J. Court Rules, Comment R. 2:10-1 (1988). Our review persuades us that there was no such miscarriage unless defendant was entitled to judgment as a matter of law, based upon either the absence of foreseeability or the absence of proximate cause. We therefore focus our attention on these questions.
The "two applicable concepts in the cases of nonintentional conduct or failure to act are the very basic ones of duty, and the breach thereof, and proximate, or legal, cause of the injury complained of." Caputzal v. The Lindsay Co., 48 N.J. 69, 74 (1966). The issue is whether or not the risk or event to be guarded against is "`reasonably within the range of apprehension of injury to another person.'" Hill v. Yaskin, 75 N.J. 139, 144 (1977), quoting 57 Am.Jur.2d, Negligence § 58 at 409.
Our review of the precedents respecting alcohol persuades us, as it did the trial judge, that foreseeability has been extended in cases involving a duty not to serve liquor to minors. Recently in Thompson v. Victor's Liquor Store, Inc., 216 N.J. Super. 202 (App.Div. 1987), a minor purchased a pint of whiskey and two six-packs of beer. The minor was not injured and he injured no one. He shared the liquor with his underage friends, one of whom injured himself. We found this result foreseeable event, saying,
Where reasonable persons could differ, however, the issue is not one to be determined by the court; it must be left for the jury. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, [17 N.J. 67, at 74-75]. [Thompson v. Victor's Liquor Store, Inc., supra, 216 N.J. Super. at 207].
The liability of a person controlling alcohol and serving it to minors has historically preceded and even exceeded that respecting service of alcohol to adults. In 1959 the Court in *302 Rappaport noted that our State had long-recognized the policy of opposing drinking by minors. See N.J.S.A. 33:1-81; N.J.S.A. 9:17B-1; N.J.A.C. 13:2-23.1(a); Alcoholic Bev. Cont. v. H & H Wine, 216 N.J. Super. 532, 534 (App.Div. 1987). In Linn v. Rand, 140 N.J. Super. 212 (App.Div. 1976), liability was imposed on a social host for damages to others caused by serving alcohol to a minor. This was long before social hosts were held liable for serving intoxicated adults. Kelly v. Gwinnell, 96 N.J. 538 (1984). The relevant principles of Rappaport have been reinforced over the years.[3]
Defendant tavern relies on Griesenbeck by Kuttner v. Walker, 199 N.J. Super. 132, 138 (App.Div. 1985), certif. den. 101 N.J. 264 (1985). In Griesenbeck we held that, assuming defendants had served their adult daughter too much alcohol, it was not foreseeable to them as reasonable people that she would arrive home intoxicated, would cause the house to be inflamed, and would be unable to rescue her sleeping children. We there recognized that Kelly v. Gwinnell, 96 N.J. 538, holding social hosts liable for serving liquor to an intoxicated guest, was limited to "`injuries resulting from the guest's drunken driving,'" Griesenbeck, 199 N.J. Super. at 138, quoting Kelly, 96 N.J. at 559, and we cited the "public interest" in drunken driving as the foundation for the Kelly decision. We reiterated that "fairness and policy also enter into an assessment of the causal relationship between the conduct [complained of] and the accidental harm" and that when "`looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm,'" *303 there is no proximate cause. Griesenbeck, 199 N.J. Super. at 139, 140, quoting Restatement, Torts 2d, § 435(2) at 449 (1965).
Defendant tavern also relies upon Jensen v. Schooley's Mountain Inn, 216 N.J. Super. 79 (App.Div. 1987), certif. den. 108 N.J. 181 (1987). There we held that plaintiffs failed to establish the liability of a tavern for serving a visibly intoxicated adult who left the bar, climbed a tree, rolled into the river and drowned, both as a matter of the duty of the tavern to foresee such a consequence, and as a matter of proximate cause.
We agree with the trial court; these cases are distinguishable. Recently, the Pennsylvania intermediate appellate court was faced with a case similar to this. A fraternity, having the status of a social host, disclaimed liability for having served alcohol to an underage drinker who ultimately set fire to another fraternity house, causing extensive damage. The court ruled that the fire damage was not unforeseeable as a matter of law. It said:
The propensities of alcohol consumption to create aggressive, combative, and often reckless behavior in adults is legendary; surely, it cannot be averred that such behavior is any less likely to result from the consumption of alcohol by those deemed legally incompetent as a class to handle its effects. This Court perceives no meaningful distinction between the conclusion ... that intoxicated minors are likely to operate motor vehicles while under the influence, creating a foreseeable risk of harm to life and property, and the likelihood that intoxicated minors will damage property through other means. While, as appellant himself concedes, the mechanism of harm more reasonably foreseen from the intoxication of minors might involve the breaking of windows, or destruction of contents, of a neighboring building, this does not preclude a finding that the fire was a reasonably foreseen consequence of appellant's intoxication. It is well settled that the peculiar way in which an injury may result is not material to a finding of foreseeability, provided there existed a foreseeable probability of injury to one within the ambit of danger [citation omitted]. Rather, the peculiar mechanism of harm to the Lambda Chi Alpha house, the negligent setting of a fire, would appear a more relevant inquiry in regard to the issue of proximate causation.
The trial court held that, as a matter of law, appellee's serving of alcohol to appellant did not proximately cause the fire. We cannot concur. It is only when reasonable minds could not differ that the issue of proximate causation is to be removed from the jury's consideration. [Alumni Ass'n v. Sullivan, 369 Pa.Super. 596, 606-607, 535 A.2d 1095, 1100-1101 (Pa. Super. Ct. 1987)].
*304 Alumni involved a social host. We consider this rationale of culpability far more compelling for a tavern charged with conduct which violated a standard of care established in New Jersey by our Legislature and Alcohol Beverage Control Commission. We are also satisfied that the judge did not err in deciding that a factual issue was presented as to Poor Mike's breach of its duty to plaintiffs respecting proximate cause.
Our review of the record also persuades us that appellant's claim of prejudice by the court's evidential rulings or plaintiffs' counsel's asserted misconduct are without merit. Evid.R. 4, 8(1), 19, 56(1). State v. Winter, 96 N.J. 640, 646 (1984); Vorhies v. Cannizzaro, 66 N.J. Super. 551, 558-559 (App.Div. 1961). We are satisfied that defendant's motions for judgment during the trial, for judgment notwithstanding the verdict, and for a new trial were properly denied.
Appellant also contends that submitting the issue of punitive damages to the jury was error, an error which the court recognized when it ultimately vacated the punitive damage awards. Appellant contends that this ruling did not vitiate the harm because the issue generated such sympathy as to invite the jury to punish defendant tavern.
In their cross-appeal Maryella and Finney urge that the order vacating the awards was error. Our review of the record persuades us that the punitive damage awards were properly vacated for the reasons expressed by the judge in her written opinion. We are satisfied that this separate issue did not adversely influence the compensatory damage verdicts.
Maryella, respecting her claim for damages for the death of her 18 month old daughter Nicole, separately asserts that there was sufficient evidence to submit this claim to the jury.[4] Her claim is unsupported by legal authority. While we are sympathetic *305 with the tragedy and loss suffered by this child's mother, we are convinced that there was no error in the ruling.
THE JUDGMENTS ARE AFFIRMED.
NOTES
[1] Plaintiff Edward Finney, individually and as administrator ad prosequendum of Mildred Finney's and Michael Thomas's estates, brought suit against defendants Ren-Bar, Bartoli, Pearline Thomas and George Thomas, Neptune Township, the Neptune Township Police Department, the Shark River Hills Fire Company, the Unexcelled Fire Company, and Joe Doe, a Neptune Township fire dispatcher. Separately plaintiff Woodie Thomas, and plaintiff Maryella Thomas, individually and as administratrix ad prosequendum of Melvin Thomas's and Nicole Thomas's estates also sued each defendant as well as the Board of Fire Commissioners of Neptune Township. These cases were tried together. At the close of the plaintiffs' cases, the judge dismissed the complaints against Neptune, the Neptune Police, the Fire Commissioners, Unexcelled Fire Company, Shark River Hills Fire Company, and Pearline Thomas. There is no appeal from these dismissals. The plaintiffs received compensatory damages as follows: Woodie Thomas, $200,000; Michael Thomas's estate, $50,000; Melvin Thomas's estate, $50,000; Mildred Finney's estate, $50,000. In addition, the jury made a punitive damage award of $100,000 each to Woodie Thomas and to Melvin Thomas's estate.
[2] We note that whether George Thomas was served alcoholic beverages by Poor Mike's while visibly intoxicated was not presented as a question to the jury.
[3] By L. 1987, c. 152, approved June 25, 1987, the civil duty of care owed by licensees to individuals under the legal age to consume alcohol was codified as follows. "A licensed alcoholic beverage server shall be deemed to have been negligent only when the server served a visibly intoxicated person, or served a minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor [defined by statute as a person under legal age to purchase and consume alcohol]." N.J.S.A. 2A:22A-5b (emphasis added). This 1987 law is, of course, not applicable to this case.
[4] All claims respecting the victims who died were limited to damages for pain and suffering.