280 N.J. Super. 406 (1993)
655 A.2d 927
REGINA DAVIS, PLAINTIFF-APPELLANT,
v.
CHRISTOPHER BROOKS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 9, 1993.
Decided April 1, 1993.
*408 Before Judges DREIER and VILLANUEVA.
Thomas E. Hood, attorney for appellant (Mr. Hood, on the brief).
Weiner Lesniak, attorney for respondent (William L. Bracaglia and Lisa A. Perez, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals from the dismissal of her complaint alleging personal injuries suffered as a result of her March 31, 1989 automobile accident. After a period of discovery, defendant moved for summary judgment. To that point plaintiff had alleged only orthopedic injuries that failed to satisfy the threshold standards of N.J.S.A. 39:6A-8a, as interpreted in Oswin v. Shaw, 250 N.J. Super. 461, 595 A.2d 522 (App.Div. 1991), later affirmed by the Supreme Court, 129 N.J. 290, 609 A.2d 415 (1992).
Prior to the hearing on the summary judgment motion, the parties concluded plaintiff's depositions. In fact, just two days before the return date of the motion, plaintiff first revealed in her deposition that she was making a "category 5 claim," under N.J.S.A. 39:6A-8a, namely that she sustained a personal injury which caused the "loss of a fetus."
*409 Plaintiff submitted a supplemental affidavit at the hearing stating that on August 13, 1991, nearly two and one-half years following the accident, plaintiff was sent for a bone scan so that her orthopedic specialist could diagnose the cause of her "persistent, continued complaints of pain the left hip and both legs and low back with numbness." On the date of the bone scan, plaintiff did not know that she was approximately three weeks pregnant. Following the bone scan, when plaintiff discovered she was pregnant, her treating gynecologist "strongly recommended" that plaintiff undergo a therapeutic abortion "because of a high probability of a defective fetus." On November 27, 1991, plaintiff's twenty-fifth birthday, she underwent the therapeutic abortion.
Plaintiff urged in her submission to the trial judge that she felt that the "abortion was directly caused by the [March 31, 1989] accident, since I had to undergo a [bone scan] test for the injuries sustained in the accident and had I not had the accident, the therapeutic abortion would not have to have been performed." Included in the record is an August 3, 1991 letter report of the orthopedic surgeon, Dr. David S. Wolkstein, stating that he had on July 29, 1991 examined plaintiff; that plaintiff described injuries in the March 31, 1989 accident and her recurrent symptoms; and that he recommended that plaintiff have the "bone scan with attention to the left hip and left femur."[1]
On January 10, 1992, the trial judge held a second hearing on defendant's summary judgment motion. The judge indicated that he was inclined to grant defendant's motion, but permitted plaintiff an "opportunity to submit additional documentation pertaining to the bone scan and the abortion." Plaintiff thereafter submitted the Muhlenberg Hospital records concerning an ultrasound examination in which the physician's notes stated that after an explanation of the problems by a physician, plaintiff "does not desire to *410 have abortion." Approximately two weeks later, however, plaintiff determined to have the abortion at the Eastern Women's Center in New York.
The trial judge's granting of defendant's motion was based in part upon his analysis of the bone scan as an intervening efficient cause breaking the chain of causation between the accident and the loss of the fetus. He agreed with defendant's contention that a blood test administered prior to the bone scan would have revealed the pregnancy, implying that it was the failure to accomplish this test that was the only substantial negligence factor in requiring the therapeutic abortion. The judge, however, was unaware that plaintiff did have a pre-scan pregnancy [blood] test prior to the bone scan. The test, however, yielded a negative result, and based upon that result, plaintiff agreed to submit to the two hour bone scan. The implication is that the blood test was inaccurate when administered when plaintiff was only three weeks pregnant. As she had not yet missed her first period, plaintiff herself was unaware of the pregnancy. Thus, there may not have been any intervening efficient cause, as assumed by the trial judge.[2]
This unhappy coincidence of the bone scan being performed in the narrow period before there was any awareness of plaintiff's pregnancy at least raised a fact issue concerning whether the accident remained a proximate cause of the loss of the fetus. The existence of proximate causes and intervening causes are factual issues which must be resolved by the jury. Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398 (1990); Rappaport v. Nichols, 31 N.J. 188, 203, 156 A.2d 1 (1959); Strumph v. Schering Corp., 256 N.J. Super. 309, 319-320, 606 A.2d 1140 (App.Div.), certif. granted, 133 N.J. 33, 626 A.2d 1090 (1992).
*411 There is no question that the loss of a fetus due to an unknown pregnancy and the administration of diagnostic x-rays is a proper element of damages in an automobile negligence action. See Bendar v. Rosen, 247 N.J. Super. 219, 588 A.2d 1264 (App.Div. 1991). The basic difference between Bendar and the case before us is that there the plaintiff was pregnant at the time of the automobile accident and had immediate diagnostic x-rays at the time when she thought she could not be pregnant because of a tubal-ligation sterilization procedure she had undergone sometime earlier. Although the plaintiff in the case before us incidentally was also pregnant at the time of her automobile accident, that pregnancy is irrelevant to this case.[3] The fact that she had diagnostic x-rays two years following the accident (to discover the cause of pain which allegedly had continued from the time of the accident through the date of the bone scan) provides a sufficient causal connection between the accident and the bone scan to bring this case within the reasoning in Bendar.
Even if there had been some negligence on the part of the hospital in performing the pregnancy test prior to the bone scan, there is no requirement that either the accident or the alleged negligence of the hospital be the sole proximate cause of plaintiff's injury. As we noted in Bendar, a jury had "determined that both the drivers' negligence and the negligence of Dr. Berman were proximate causes of plaintiff's injuries associated with the termination of her last pregnancy." 247 N.J. Super. at 239, 588 A.2d 1264. We explained:
[T]o be a proximate cause, ... conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury.... The tortfeasor need not foresee the precise injury; it is enough that the type of injury be with an objective `realm of foreseeability.'
....
[P]laintiff specifically testified that a significant consideration in her decision [to have the abortion] was the danger that the x-rays had deformed the fetus.... *412 While causation certainly remained a fact issue, the jury could properly have resolved it against the automobile defendants.
[Id. at 229-230, 588 A.2d 1264.]
In Bendar as here, the defendants argued that they could not have anticipated that a plaintiff would be unaware of her pregnancy when she underwent diagnostic x-rays. Id. at 230, 588 A.2d 1264. We rejected this argument in Bendar, stating that "it is foreseeable that an accident victim may seek medical treatment" and a tortfeasor "may be liable for the damaging effect of the treatment even if it was performed negligently...." Ibid.
There is no question that there may be any number of causes intervening between a negligent act and a final injurious occurrence. If they are reasonably foreseeable, each intermediate cause may be deemed a proximate result of the first wrongful act. The original negligence is deemed to continue and operate contemporaneously with all intervening acts of negligence that might reasonably be foreseeable, so that the original negligence is regarded as a concurrent cause of the final resulting injury. The causal connection may be broken by a superseding intervening cause. Such a cause must be one that so entirely supersedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way. But where the original tortfeasor's negligence is an essential link in the chain of causation, such a causal connection is not broken if the intervening cause is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable. See generally Scafidi v. Seiler, supra, 119 N.J. at 101, 574 A.2d 398; Kelly v. Gwinnell, 96 N.J. 538, 543, 476 A.2d 1219 (1984); Panas v. New Jersey Natural Gas Co., 59 N.J. 255, 258-259, 281 A.2d 520 (1971); Rappaport v. Nichols, supra, 31 N.J. at 203, 156 A.2d 1; Menth v. Breeze Corp., Inc., 4 N.J. 428, 441-442, 73 A.2d 183 (1950); Daniel v. Gielty Trucking Co., 116 N.J.L. 172, 173-174, 182 A. 638 (E. & A. 1936); Daniel v. State of New Jersey, Dept. of Transp., 239 N.J. Super. 563, 595, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990); Skripek v. Bergamo, 200 N.J. Super. 620, 634, 491 *413 A.2d 1336 (App.Div.), certif. denied, 102 N.J. 303, 508 A.2d 189 (1985).
Plaintiff's orthopedic injuries were clearly insufficient to satisfy the standards of N.J.S.A. 39:6A-8a. Under the interpretation of the statute in Oswin v. Shaw, 129 N.J. 290, 319-320, 609 A.2d 415 (1992), there was "objective, credible evidence that could support a jury finding" that there was a "serious impact on plaintiff's life." The Court found that "the Legislature sought to guard against a finding of `serious injury' when plaintiff's proofs are based solely on subjective complaints of pain." Ibid. We might question whether the subjective complaints advanced by plaintiff in this case, recurring over a period of years and occasioning the bone scan, might not have satisfied the statutory standard, but the Supreme Court has settled this issue in Oswin. The orthopedic injuries do not satisfy the type 6, type 7, type 8, or type 9 injuries in N.J.S.A. 39:6A-8a. See Oswin, 129 N.J. at 315, 609 A.2d 415. A description of the symptoms experienced by plaintiff may well be admissible at trial but solely to support the reason for which the bone scan was prescribed by her physician and plaintiff's agreement to the procedure. There should, however, be a suitable limiting instruction. See Evid.R. 6. Plaintiff has, however, properly alleged a type 5 injury ("loss of a fetus") for which an action is permitted under N.J.S.A. 39:6A-8a.
The judgment appealed from is reversed as to a type 5 injury only and is otherwise affirmed. The matter is remanded to the Law Division.
NOTES
[1] She stated that she was referred to him "because of her persistent left-sided hip pain radiating into the left lower extremity that occurs when sitting for longer than one-half hour or standing for longer than twenty minutes," and that "when sitting or standing for long periods of time, both of her legs `go numb'."
[2] The plaintiff has indicated, however, that she intends to file a separate suit against the laboratory that she contends negligently performed the pregnancy test.
[3] At the time of the accident plaintiff had been four months pregnant and delivered a normal, healthy baby.