712 A.2d 244

KEITH SHOWALTER, PLAINTIFF–RESPONDENT, v. BARILARI, INC. T/A RINGSIDE PUB, DEFENDANT–APPELLANT, AND MIKEY DENTENNIS AND JOE NYLON, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted April 21, 1998—Decided June 17, 1998.

496

Before Judges DREIER, KEEFE and WECKER.

*Bolan Jahnsen*, attorneys for appellant (*Daniel S. Jahnsen*, on the brief).

*Lori S. Stanley*, attorney for respondent (*Robert J. McKenna*, on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

Defendant, Barilari, Inc., appeals after a jury in this dram-shop action awarded plaintiff $933,000 for injuries received when plaintiff, Keith Showalter, then a nineteen-year-old high school student, pushed his arm through two plate-glass store windows after drinking in defendant's pub. The jury found that defendant had served plaintiff in circumstances in which it knew or should have known he was "underage," and that the service proximately caused plaintiff's injuries. The jury also found, however, that defendant had not served plaintiff when he was visibly intoxicated. The jury attributed twenty-five percent of the liability to plaintiff and seventy-five percent to defendants Mikey Dentennis, the

bartender, and Barilari, Inc., his employer.[1] The verdict was molded accordingly, and judgment was entered in the amount of $699,750, plus prejudgment interest and costs, for a total award against defendant of $867,230. Defendant's motion for a new trial was denied. This appeal followed.

Defendant has two primary contentions of error. First, it argues that the trial court should have granted its motion for involuntary dismissal at the end of plaintiff's case because he failed to present any evidence describing how the incident occurred or establish a nexus between the incident and his having been served alcohol. Second, it contends that the jury was improperly precluded from considering plaintiff's actions in causing his own injury because the instructions limited the jury's consideration of plaintiff's liability to his decision to become voluntarily intoxicated. We disagree with defendant on the first issue but agree on the second issue and remand for a new trial on liability.

## I.

We deal first with the issue concerning the denial of defendant's motion for involuntary dismissal and recite the evidence advanced by plaintiff on the issue of liability.

On May 1, 1991, plaintiff was a nineteen-year-old high school senior, intending to enter the Navy within a week's time. That evening, he and his girlfriend went to defendant's pub for a "going away party." Plaintiff had visited the pub with two friends and his brother on approximately three earlier occasions. That night plaintiff and his girlfriend arrived at approximately 8:00 p.m, and were later joined by plaintiff's brother, Oliver Prochaska, Tim DeHaas, and Dean Genoulis.

---

[1] All references herein to "defendant" shall be to Barilari, Inc., the only defendant who appealed.

Defendant Dentennis was the bartender on each of plaintiff's prior visits and he was working as a bartender on the night of May 1. Plaintiff had known Dentennis since they had played baseball together in Little League. Dentennis also attended high school with plaintiff and his brother. On one of plaintiff's earlier visits, Dentennis had asked plaintiff for proof of his age. Plaintiff did not have proof of his age at the time and he was not served. Plaintiff testified that on May 1 no one asked him for identification, but he was carrying false identification. Plaintiff testified that he had never used the false identification and did not use it on the night he was injured.

Plaintiff and his girlfriend were drinking beer when they first arrived, but when Genoulis arrived about forty-five minutes later the group began drinking "pitchers" of kamikazes.[2] Plaintiff testified that during the period from eight o'clock to ten o'clock that evening he had drunk "between ten and fifteen mugs" of beer. The group also shared about six pitchers of kamikazes, but plaintiff did not know how many shots he had had from the pitchers. After drinking the shots, plaintiff began to feel "very loose." The room was spinning, and he was feeling queasy.

Plaintiff asked his girlfriend to leave, but she refused. He testified that when she refused a second time he poured his beer over her and the next thing he remembered was being in a fight. Plaintiff could not remember much about the fight, nor could he remember how he left the pub, but said that he thought "a group of people pushed me out." His next recollection was "[w]aking up in a pool of blood in the hospital."

Plaintiff's brother, Harold, known as "Howie," was 20 years old at the time. Howie testified that he had also known Dentennis since the two had played Little League baseball and had gone to the same high school. He said that he and Dentennis would

---

[2] The bartender later explained that "pitchers" of kamikazes were silver tins, approximately the size of a beer mug, which held nine or ten ounces of liquor.

converse on occasion, and Dentennis knew Howie and plaintiff were brothers.

On the night of May 1, Howie arrived at the bar at approximately 9:00 p.m. and saw plaintiff, plaintiff's girlfriend, and Genoulis at the bar. He noticed that plaintiff's eyes were "glassy" and "bloodshot," and that he was swaying as he stood. He saw a pitcher of kamikazes in front of the group. Howie ordered a beer and was served by Dentennis. At about 10:00 p.m., Howie ordered his third beer and noticed plaintiff "was in the gravy." He advised plaintiff to leave. Shortly thereafter a fight broke out near plaintiff. Howie could not see plaintiff but saw people "piling ... towards ... the entrance part...." By the time Howie got outside, he saw someone tying a shirt around plaintiff's arm. Howie retrieved his car from the back of the pub and drove plaintiff to the hospital.

Eric Ball, a friend of plaintiff and his brother, testified that about five minutes after he entered the pub on the night of May 1, he saw that a fight was about to occur involving plaintiff. He went over to separate the two people. The fight was broken up, and Kenny Barilari and others escorted plaintiff from the bar. A short time later, he heard a "big boom" and saw that one of the pub's front windows had been broken.

Plaintiff's counsel was allowed to read portions of Dentennis's deposition to the jury. In the portions of the deposition read to the jury, Dentennis said he knew "Howie" from high school, but the two were not in any classes together and Dentennis did not know what grade "Howie" was in. He had heard that "Howie" had a brother named Keith, but did not know him. Dentennis had refused to serve plaintiff on one occasion a few weeks earlier because he had no identification. Dentennis said that he had not requested identification on the night of May 1 because one or two weeks earlier plaintiff had come in and shown him a driver's license and social security card proving he was old enough to drink. He believed that that identification was in the name of Harold Showalter.

After resting his case, defendant moved for an involuntary dismissal. It argued that plaintiff had presented ·no evidence indicating how plaintiff injured himself, the effect of the service of the alcoholic beverages on plaintiff's conduct, or "the nexus between the allegations of drinking and the ultimate harm." Defendant also contended that there was no testimony indicating that plaintiff was served under circumstances in which it was apparent that he was a minor.

The trial judge acknowledged that he did not "know how the window got broke." The judge, however, recognized that he was nonetheless "caught by the language" of case law regarding the propensity of alcohol consumption to create hostile and reckless behavior. Stating that he was "giving every fair inference" to plaintiff and that "the question of foreseeability [was] for the jury," the judge denied defendant's motion.

To survive defendant's motion for dismissal, plaintiff had to have presented evidence from which the court could determine a basis for dram-shop liability as set forth in *N.J.S.A.* 2A:22A–5 ("Conditions for recovery of damages"):

a. A person who sustains personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server may recover damages from a licensed alcoholic beverage server if:

(1) The server is deemed negligent pursuant to subsection b. of this section; and

(2) The injury or damage was proximately caused by the negligent service of alcoholic beverages; and

(3) The injury or damage was a foreseeable consequence of the negligent service of alcoholic beverages.

b. A licensed alcoholic beverage server shall be deemed to have been negligent only when the server served a visibly intoxicated person, or served a minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor.

Thus, to prevail under the statute plaintiff had to prove 1) negligent service as defined in *N.J.S.A.* 2A:22A–5(b), 2) a nexus between the negligent service and the injury, and 3) that the type of injury was a foreseeable consequence of the negligent service. Defendant's argument on appeal focuses on the latter two elements.

Defendant argues that by permitting the case to go forward in the absence of proof regarding both the proximate cause between the alcohol and the incident and the foreseeability of the ultimate harm, the court improperly relieved plaintiff of a burden of proof incumbent upon him under the Dram Shop Act.

The concepts of proximate cause and foreseeability are intertwined. " '[T]o be a proximate cause ... conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury.' " *Yun v. Ford Motor Co.*, 276 *N.J.Super.* 142, 159, 647 *A.*2d 841 (App.Div.1994) (Baime, J., concurring and dissenting) (alteration in original) (quotation omitted), *rev'd on dissent,* 143 *N.J.* 162, 669 *A.*2d 1378 (1996). A superseding cause is one "that so entirely supersedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way." *Davis v. Brooks,* 280 *N.J.Super.* 406, 412, 655 *A.*2d 927 (App.Div.1993). However, "where the original tortfeasor's negligence is an essential link in the chain of causation, such a causal connection is not broken if the intervening cause is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable." *Ibid.* Furthermore, the tortfeasor need not foresee the precise injury which occurred; it is sufficient that the type of injury be within the objective "realm of foreseeability." *Id.* at 411, 655 *A.*2d 927.

Generally, issues of proximate cause are left to the jury. *Yun v. Ford Motor Co., supra,* 276 *N.J.Super.* at 160, 647 *A.*2d 841 (Baime, J., concurring and dissenting). This is so even when the injury was caused by a seemingly extraordinary event. *Ibid.* In *Yun,* the plaintiffs' decedent was killed when he ran onto the Garden State Parkway to retrieve a worn-out spare tire, which had fallen to the roadway from an allegedly defective mounting bracket on the back of the decedent's van. *Id.* at 147–49, 647 *A.*2d 841. In reversing this court's holding that no proximate cause existed as a matter of law, a majority of the Supreme Court

adopted without comment Judge Baime's dissent. *Yun v. Ford Motor Co., supra,* 143 *N.J.* at 163, 669 *A.2d* 1378. In Judge Baime's view, the issue should have remained a factual, rather than legal, determination as long as the outcome was "reasonably debatable." *Yun v. Ford Motor Co., supra,* 276 *N.J.Super.* at 162, 647 *A.2d* 841.

In dram-shop cases in New Jersey, questions of causation and foreseeability are usually insignificant because dram-shop liability has arisen most often in the context of drunken driving, where causation and foreseeability are well established. *See Steele v. Kerrigan,* 148 *N.J.* 1, 22–24, 689 *A.2d* 685 (1997). There are, however, few dram-shop cases that have considered issues relating to liability in a non-auto setting. *Steele v. Kerrigan, supra,* 148 *N.J.* at 7, 689 *A.2d* 685 (where a tavern's underaged, intoxicated patron assaulted another patron); *Finney v. Ren–Bar, Inc.,* 229 *N.J.Super.* 295, 297, 551 *A.2d* 535 (App.Div.1988) (where a tavern's underaged, intoxicated patron negligently set a fire); *Jensen v. Schooley's Mountain Inn, Inc.,* 216 *N.J.Super.* 79, 522 *A.2d* 1043 (App.Div.1987) (where a tavern's intoxicated patron climbed a tree, fell into a body of water, and later drowned).

In *Finney,* this court held that the concept of "foreseeability has been extended in cases involving a duty not to serve liquor to minors." 229 *N.J.Super.* at 301, 551 *A.2d* 535. That is so because a tavern's liability for negligently serving minors "has historically preceded and even exceeded that respecting service of alcohol to adults." *Ibid.* Our decision in that case adopted the foreseeability analysis of a Pennsylvania court on the subject. Specifically, we held that it was foreseeable that an intoxicated minor might engage in "aggressive, combative, and often reckless behavior" as well as "damage property." *Id.* at 303, 551 *A.2d* 535 (quoting *Alumni Ass'n v. Sullivan,* 369 *Pa.Super.* 596, 535 *A.2d* 1095, 1100–01 (1987)).

In *Steele v. Kerrigan, supra,* decided shortly after the trial of this case, the Court cited with approval our decision in *Finney* and recognized that "minors are especially likely to be adversely

affected by alcohol and to cause damage to themselves and others." 148 *N.J.* at 28–29, 689 *A.*2d 685.[3] Indeed, the Court noted that a minor is entitled to an instruction that such behavior, in general, is "considered one of the foreseeable risks of negligent alcohol service" and further instructed on "the policy reasons for [the] heightened duty" owed to underage patrons. *Id.* at 34, 689 *A.*2d 685.

█ Applying these principles to the case at hand, we conclude that plaintiff's proofs, though unnecessarily sparse in light of the evidence that followed in the defense case, were sufficient to overcome a motion for involuntary dismissal on the issues of proximate cause and foreseeability. Viewing the proofs in a light most favorable to plaintiff, a jury could reasonably conclude that plaintiff was intoxicated and that defendant was negligent in serving him when it knew or should have known that he was underage. While it is true that there were no specific proofs as to how plaintiff was injured, the circumstantial evidence was sufficient for the jury to conclude that he injured himself by coming into contact with the glass window of the tavern. Plaintiff could have come into contact with the window in one of several ways: he could have been thrown into the window by those who escorted him from the premises, one of whom was an owner of the tavern; he could have stumbled into the window in view of his intoxication; or he could have struck the window in anger because of his ejection from the tavern. A jury could reasonably conclude from the evidence it heard that any one, or all, of those scenarios was

---

[3] In *Steele v. Kerrigan*, the Court did not discuss the retroactive effect of its decision. Nevertheless, as always, we presume that judicial decisions at the very least apply retroactively to cases pending in the trial courts and on appeal, unless specifically limited by policy considerations. *Olds v. Donnelly*, 150 *N.J.* 424, 449, 696 *A.*2d 633 (1997); *Crespo v. Stapf*, 128 *N.J.* 351, 367, 608 *A.*2d 241 (1992). Here, defendant filed a timely notice of appeal, and thus, the decision shall be given retroactive effect in the absence of the Court's pronouncement otherwise. Furthermore, as will be discussed further in Point II, it can be said that the Court's decision in *Steele* amounted only to a clarification of existing law, rather than establishment of new law.

proximately caused by plaintiff having been negligently served intoxicating beverages while underage. Furthermore, as the case law clearly holds, all of these events could have been found to be foreseeable, including the arguably intentional act of striking the window. Plaintiff need not prove which of the three scenarios was the most probable one when any of the three could result in defendant's liability.

## II.

We now address defendant's claim that the jury charge on comparative negligence erroneously limited the jury's consideration of plaintiff's fault to his decision to become voluntarily intoxicated. Defendant additionally raises as plain error that certain portions of the instructions mistakenly shifted plaintiff's burden to prove by a preponderance of the evidence the initial negligence elements of his dram-shop action. To put the discussion in focus, we now recite the relevant evidence on the issue produced in the defendant's case.

On the night of May 1, Kenny Barilari was cleaning tables when he noticed plaintiff arguing with a man who had a cast on his leg. He immediately attempted to break up the argument. Plaintiff apologized, but Barilari told plaintiff that he had to leave. Barilari walked plaintiff the short distance to the front door. Barilari described plaintiff as walking normally as he left the bar. Standing in the doorway, Barilari watched plaintiff walk away from the pub for about fifteen or twenty feet:

And then he stopped in front of a window, my—in my pizzeria window. And he said, eyah-h-h-h-h, and he punched through the window. And then he stopped for a second. And I was like mesmerized. I couldn't believe it. And then he went walking up the street a little further, and there's a Chinese restaurant next to my store. And he goes eyah-h-h-h-h, and punched through their window. And with that, he realized that he was hurt, and all blood starting squirting. And so, I went running over to him and I tried to help him. And he didn't really want any help. And somebody came out, and I said, call the ambulance, call the ambulance. And then—and then one of the girls was a nurse, so she tried to help in [sic]. And then I went in to make sure somebody called the ambulance. And somebody had already called the ambulance. And then he got in one of his friend's cars and left. And it all happened like that.

Under the comparative negligence statute, plaintiff's damage award is diminished by the percentage of negligence attributed to his own conduct. *N.J.S.A.* 2A:15–5.1. Concerning plaintiff's fault, the court instructed the jury as follows:

Plaintiff Keith Showalter; however, also has a responsibility not to become involuntarily—voluntarily intoxicated. And is responsible in his conduct in drinking to a point of intoxication. You're to consider the negligence of plaintiff Keith Showalter in becoming voluntarily intoxicated and the negligence of Mickey—Michael [Dentennis] in serving an underage or visibly intoxicated person, and the nature and circumstances of the events which caused the plaintiff Keith Showalter's injuries. Based on all the relevant evidence, you must allocate the responsibility for the evid—for the event which caused the plaintiff's injury. And simply we're saying the tavern has a responsibility. Don't serve someone that's visibly intoxicated. Don't serve someone who is underage or apparently looks underage under the circumstances. Alright? But the person, you are serving, also has a responsibility. It is contended that plaintiff Keith Showalter was at fault by becoming voluntarily intoxicated or by other conduct, which might suggest he was negligent.

Now, in this question of comparative negligence, we have, what is called, the ultimate outcome. In weighing the negligence, you have to weigh the percentage of responsibility of each. I charge you, as a matter of law, that if you find that the plaintiff's conduct and that his voluntary intoxication, if you so find—remember these are all factual findings for you, if you so find fifty-one percent plaintiff, that it was his voluntary intoxication that brought about the event and the subsequent injury, then you have found, what is called, a no cause for action and he cannot recover.

In limiting the jury's consideration of plaintiff's behavior, the court apparently believed it was applying the standard articulated in *Lee v. Kiku Restaurant,* 127 *N.J.* 170, 184, 603 *A.*2d 503 (1992). There, the Court held that

once a jury determines that a tavern continued to serve drinks to a visibly-intoxicated patron, the jury should not be instructed, absent exceptional circumstances, to determine the extent to which the patron retained some capacity to appreciate the risk of engaging in the activity that led to the accident. If a tavern serves alcohol to a visibly-intoxicated patron, a court will ordinarily presume the patron's lack of capacity to evaluate the ensuing risks.

[*Ibid.*]

In this case, the trial court failed to consider that the jury could decide, as it ultimately did, that defendant was not negligent for serving plaintiff after he became visibly intoxicated. Under the rationale of *Kiku,* the plaintiff is entitled to the presumption that he lacked the capacity to evaluate the ensuing risk only after the

jury first determines that the tavern served a patron once the patron became visibly intoxicated. *Ibid.*

Further, the trial court failed to consider whether plaintiff's apparently volitional conduct, based upon the uncontradicted testimony of Barilari, constituted "exceptional circumstances." *Ibid.* The Supreme Court has made it clear that an assaultive patron is not "entitled to a presumption that he did not have the capacity to appreciate or control his own actions after being negligently served by the tavern." *Steele v. Kerrigan, supra,* 148 *N.J.* at 33, 689 *A.*2d 685. Instead, "the jury should be instructed to consider the patron's capacity to initiate or refrain from volitional assaultive conduct, as well as all other relevant evidence." *Id.* at 33, 689 *A.*2d 685. The Court offered additional direction on the proper jury charge to be employed when the assaultive patron is a minor:

> In the case of an intentional assault ... the jury should be instructed to apportion fault on the basis of all the evidence, including evidence of the tavern's negligence in both commencing and continuing to serve the minor, evidence of the minor's fault in deciding to consume the alcohol, evidence concerning the minor's actual degree of intoxication and his capacity to determine whether to refrain from or initiate assaultive behavior, and any evidence of the minor's predisposition to violence or other factors contributing to the incident.
>
> [*Id.* at 34, 689 *A.*2d 685.]

This case differs from *Steele* only in that the plaintiff here did not assault another patron while in an intoxicated state. Nonetheless, plaintiff's conduct was volitional, according to uncontradicted defense testimony. As *Steele* points out, there are different considerations pertinent to the issue of allocation of fault that apply to dram-shop cases where the intoxicated patron causes injury to another resulting from drunk driving as opposed to where injury is caused from volitional behavior. *Id.* at 30–35, 689 *A.*2d 685. The Dram Shop Act requires the application of the Comparative Negligence Act. *N.J.S.A.* 2A:22A–6. The Dram Shop Act also requires that foreseeability and causation be considered in apportioning fault. *Steele, supra,* 148 *N.J.* at 33, 689 *A.*2d 685. Requiring the jury to consider all the relevant circumstances in apportioning fault in cases such as this, where the patron is not involved

in an auto accident, achieves both purposes. An erroneous instruction that precludes the jury from fully considering the fault of a patron who acts purposely taints a verdict concerning the tavern's liability under the Dram Shop Act. *Id.* at 35, 689 *A*.2d 685. Under the circumstances, a new trial is required.

On remand, the trial court is cautioned that its instruction concerning comparative negligence should not shift to defendant the burden of proving the essential elements of plaintiff's claim, as it did in the language we now quote:

> [T]he burden of proof is upon the plaintiff. The burden does not shift. However, when there is, what we call, an affirmative defense, as there is in this case, then the defendant in this case, the tavern Barilari Inc. and Mike—Mikey [Dentennis], they have a burden related to the preponderance of evidence. In other words, they must produce evidence by a preponderance of evidence. And in this case, they say:
>
>> One, we didn't serve him underage or apparently underage. Two, he wasn't served while intoxicated.
>
> Alright. And then, going on further, they say that, if he was in fact intoxicated; or he was served underage, which we deny, nevertheless, his intoxication was self-induced.
>
> That's the comparative negligence and the burden is upon, obviously, the defendants in this case.

The judge followed this instruction with a charge that the plaintiff retained the burden of proving each element of his claim.

In the above language, the court may have been referring only to the allegation that plaintiff's intoxication was self-induced. Nevertheless, the judge framed an essential element of plaintiff's claim, that he was served while apparently underage or while intoxicated, in the context of an affirmative defense to be proved by defendant by a preponderance of the evidence. The instruction had the capacity to prejudice the defendant and affect the result.

## III.

Defendant argues that the court erroneously permitted extensive testimony by plaintiff and his brother concerning instances when they had seen their underage friends served alcohol in defendant's establishment. It asserts that the evidence was improperly offered as "character" evidence; that plaintiff failed to

establish the foundation necessary for the evidence to have been considered alternatively as indicative of the business's "habit"; and that the curative instruction given by the court was "woefully insufficient" to counteract the prejudice of the improper testimony. Plaintiff argues that the testimony was admissible evidence of "habit" and "routine practice" because plaintiff presented "22 instances of service of alcoholic beverages [to underage patrons] on four occasions by the defendant," and that the curative instruction was not erroneous, although plaintiff has not filed a cross-appeal on the issue.

A great deal of the trial testimony concerned various instances when plaintiff and his brother had witnessed their underage friends being served alcoholic beverages in defendant's pub. Plaintiff, for example, had testified that his girlfriend, his brother, Prochaska, DeHaas, and Genoulis were underage and that he had seen them being served alcoholic beverages at the pub on several occasions. Similar testimony was adduced from plaintiff's brother.

When defendant objected to plaintiff's testimony concerning his friends, the court stated that the evidence was relevant in that, "in this particular business establishment, it's part of their habit to serve people that are underage" and "it goes to the very credibility of, one, was this particular plaintiff underage when he was served." The court later told the jury that:

This particular testimony has gone to, what we would call, the character of the business and the manner in which it's carried out. . . .

. . . .

. . . [W]hile it's evidence of the manner in which the business was conducted, it is not, alright, direct evidence on those two issues as to this plaintiff. But it may be considered, and it is relevant, and it does have some relevance related to it. It is not material to the issue of the plaintiff being under the influence of alcohol, if in fact he was; if in fact he was served alcoholic beverage, alright; and whether or not he was underage. . . . [I] just wanted to clarify to this jury, that that particular evidence that you're hearing in relation to other peoples [sic] age, just goes to the general conduct of business. Alright? I will give you a more specific charge as to this particular plaintiff and what's required as to this particular plaintiff.

Initially, the court informed defendant that it would be able to counter the testimony "by direct [sic] examination of each person

as proof and how they got proofed." At that time, plaintiff's counsel had represented that Tim DeHaas, Dean Genoulis, Oliver Prochaska, and plaintiff's girlfriend would testify. Later, when defendant's counsel argued that plaintiff had the burden to establish that it was apparent that each was a minor at the time, and whether or not they had been proofed, the court retracted the possibility of cross-examination because plaintiff had not called the witnesses. The court stated that it would "allow[ ] this testimony as a general situation[,][b]ut [it was] not gonna have fourteen trials as to each individual who was there and whether he proofed [*sic*] or not proofed."

When the court later recognized that, despite the proffer of plaintiff's counsel, none of the individuals referred to by plaintiff and his brother would testify, it instructed the jury to disregard all testimony concerning individuals who were underage:

As you know, I allowed testimony by plaintiff and plaintiff's brother, Howard Showalter, in relationship to being—whether they proofed or not proofed [*sic*]. An issue of fact for you to decide. But what I want to direct your attention to, is this, that there was some testimony of other individuals that allegedly were not of age and were not proofed. I'm gonna ask you to disregard that statement and ris—disregard the testimony as to those individuals who were not brought before the Court to testify. Alright? So, you still have the testimony though of Howard Showalter and you have the testimony of Keith Showalter....

We conclude that the trial judge erroneously admitted the evidence regarding other instances of alcohol service to minors. Although the curative instruction may have prevented reversible error, the same error should be avoided on remand. Therefore, a discussion of the issue is warranted.

"Evidence of a person's character or a trait of his character, including a trait of care or skill or lack thereof, is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion...." *N.J.R.E.* 404(a). There are exceptions to the rule, but clearly, none of those exceptions apply here.

The rule also specifically provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the disposition of

a person in order to show that he acted in conformity therewith." *N.J.R.E.* 404(b). But, "[s]uch evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." *Ibid.* Plaintiff makes no argument that the evidence was offered for any of the purposes permitted by *N.J.R.E.* 404(b).

While evidence of a character trait generally is inadmissible, evidence pertaining to a "habit" is permitted. Under *N.J.R.E.* 406,

(a) Evidence, whether corroborated or not, of habit or routine practice is admissible to prove that on a specific occasion a person or organization acted in conformity with the habit or routine practice.

(b) Evidence of specific instances of conduct is admissible to prove habit or routine practice if evidence of a sufficient number of such instances is offered to support a finding of such habit or routine practice.

The essential difference between the two types of evidence is the required degree of specificity in the described conduct. *State v. Radziwil,* 235 *N.J.Super.* 557, 563–66, 563 *A.*2d 856 (App.Div. 1989), *aff'd o.b.,* 121 *N.J.* 527, 582 *A.*2d 1003 (1990). Habit evidence depicts, with specificity, a routine practice in a particular situation. *State v. Kately,* 270 *N.J.Super.* 356, 363, 637 *A.*2d 214 (App.Div.1994). It involves a "regular practice of responding to a particular kind of situation with a specific type of conduct." *State v. Radziwil, supra,* 235 *N.J.Super.* at 564, 563 *A.*2d 856 (quoting *McCormick on Evidence* § 195, at 574–75 (Cleary ed., 3d ed.1984)); *accord State v. Kately, supra,* 270 *N.J.Super.* at 362, 637 *A.*2d 214.

The only issue for which habit evidence arguably could have been relevant in this case was whether defendant had a practice of serving alcohol to minors in circumstances in which it knew or should have known their underage status, or that it simply did not care. *N.J.S.A.* 2A:22A–5. However, none of the testimony offered by plaintiff and his brother described the specific circumstances under which defendant allegedly served alcohol to the named individuals. No testimony demonstrated whether the

appearance of those individuals should have indicated their underage status; whether they presented credible false identification; whether the individuals were personally known to the bartender; whether their drinks were purchased for them by someone of legal drinking age without defendant's knowledge; or whether defendant simply failed to request proper identification when it should have done so.

The trial court, therefore, erred when it admitted the testimony regarding other instances of service to minors for the impermissible purpose of proving "the general conduct" and "character" of the business and, specifically, that plaintiff was served alcoholic beverages and was underage. On remand, such evidence should be excluded unless the court determines in a *N.J.R.E.* 104 hearing that additional details are available such that the evidence rises to the level of habit. *See* Biunno, *Current N.J. Rules of Evidence,* comment 3 on *N.J.R.E.* 406 (1997–98).

## IV.

 Defendant argues that the judge erroneously admitted evidence of plaintiff's blood alcohol readings contained within hospital records. Plaintiff's hospital records from the day of the incident were submitted to the jury without foundation testimony, and furthermore, no expert opinion was presented to explain any of the notations. The records initially were to be used by plaintiff solely for the purpose of refreshing the recollection of Dr. Servidio, plaintiff's treating doctor. Defense counsel appeared to believe that the records would, therefore, be admissible evidence under the business records exception to the hearsay rule, *N.J.R.E.* 803(c)(6), and the court apparently agreed.

Defendant objected to the doctor testifying concerning the blood alcohol reading contained in the records because the doctor had not treated plaintiff until long after the reading was taken. The court excluded testimony about the reading, but admitted the record, saying that "[i]t speaks for itself" and could be considered as evidence that intoxicating liquor was served. This court has

not been supplied with the records, but plaintiff apparently had a serum alcohol reading of .148. Levels set forth in the driving while intoxicated statutes are expressed in breath alcohol levels. *N.J.S.A.* 39:4–50.

During deliberations, the jury sent the court the special chemistry laboratory report and asked, "How high is this measure and does it compare to New Jersey's DWI level?" The court informed the jury that,

> the statute, upon which the plaintiff brought his action, does not consider New Jersey's DWI level of alcohol. Further the level is not to be used. The—the level is to be used only as to the facts presented and it cannot conclu—it cannot be concluded from the read—from [the] reading alone that the plaintiff was visibly intoxicated when served.

The court's decision to admit the laboratory record of plaintiff's blood alcohol level was erroneous for several reasons. Ostensibly, the record was submitted as a writing to refresh recollection, not as a business record. However, writings used to refresh recollection are admissible as evidence only at the request of the adverse party. *N.J.R.E.* 612. In fact, here the court prohibited questioning the doctor regarding the reading; and thus, it was not even used for that purpose.

In addition, the blood alcohol record was cumulative in proving that intoxicating liquor was served to plaintiff because both plaintiff and defendant clearly testified as to that fact. Although the reading might have been relevant if properly explained to show plaintiff's degree of intoxication and, thus, the extent of his capacity to appreciate and control his behavior, it was not offered for that purpose.

In any event, it was inappropriate to submit unexplained scientific data to the jury without expert testimony. The interpretation of scientific and medical data "is the function of the qualified expert, and the relationship of the data to the particular case is also a proper subject of expert opinion for the physician or other similarly qualified witness." *Grassis v. Johns-Manville Corp.*, 248 *N.J.Super.* 446, 455, 591 *A.*2d 671 (App.Div.1991). The jury clearly did not understand the meaning of the blood alcohol data

and should not have been permitted to "speculate in an area where laypersons could not be expected to have sufficient knowledge or experience." *Posta v. Chung–Loy,* 306 *N.J.Super.* 182, 204, 703 *A.*2d 368 (App.Div.1997). There is a considerable difference between the prohibition imposed against driving an automobile when one's blood alcohol reading is .10 or greater, and when the same person's ability to perform other tasks is measured by the amount of alcohol consumed. A jury not adequately informed on the subject may leap to unfounded conclusions concerning a non-driver's conduct based solely upon a blood alcohol reading.

On remand, the blood alcohol evidence and any other scientific data should not be admitted in the absence of expert testimony.

## V.

Defendant argues that the trial judge erred in denying its request for a charge that in procuring the false license plaintiff violated *N.J.S.A.* 39:3–37, prohibiting intentional misstatements when applying for a driver's license. It argues that "[u]nder the New Jersey Model Jury Charge 5.20D a request [to charge] for violation of any statute may be made so long as it is relevant."

The trial court correctly denied the defendant's request. A jury generally may consider violations of a statute in determining negligence or contributory negligence. *Dubak v. Burdette Tomlin Mem'l Hosp.,* 233 *N.J.Super.* 441, 462, 559 *A.*2d 424 (App.Div.), *certif. denied,* 117 *N.J.* 48, 563 *A.*2d 817 (1989). This rule, however, " 'is subsumed by the overriding principle that the statutory violation, to be evidential, must be causally related to the happening of the accident, since a permissible inference of causality is indispensable to its relevancy.' " *Ibid.* (citation omitted).

In this case, neither the bartender nor the owner testified that plaintiff showed them a fraudulent license on the night of the incident, and plaintiff denied having ever used the false license. Consequently, the license, and especially its procurement, could not have misled defendant into believing that plaintiff was appar-

ently of age to drink or into serving him until he was visibly intoxicated.

The judgment under review is reversed on the issue of liability only. The matter is remanded for a new trial limited to that issue, inasmuch as none of the errors identified herein impacted on the damage verdict. *See Steele, supra,* 148 *N.J.* at 35–36, 689 *A.*2d 685.