**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2395-21

JENNIFER WEINMEIER,

     Plaintiff-Appellant,

v.

JOSEPH GARZONE, EVELYN
GARZONE, AQUELAN
INTERNATIONAL LLC, and
STEVEN HERGENROTHER,

     Defendants-Respondents,

and

GREG SUPPA, a/k/a or d/b/a
SUPPA HOME INSPECTIONS,

     Defendant.

_____

              Submitted October 16, 2023 – Decided February 24, 2025

              Before Judges Gilson, DeAlmeida and Bishop-Thompson.

              On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4083-19.

Law Office of Alexander Schachtel, attorneys for appellant (Alexander Schachtel, on the brief).

Manning, Caliendo & Thomson, PA, attorneys for respondents Joseph Garzone and Evelyn Garzone (Vincent Manning, on the brief).

Singer Law LLC, attorneys for respondents Aquelan International LLC and Steven Hergenrother (Jonathan D. Singer, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff Jennifer Weinmeier appeals from the March 15, 2022 order of the Law Division granting summary judgment in favor of defendants Joseph Garzone, Evelyn Garzone, Aquelan International LLC (Aquelan), and Steven Hergenrother, and denying plaintiff's motion for leave to file an amended complaint in this dispute over mold plaintiff discovered in a home shortly after she purchased the property.[1] We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

---

[1] Plaintiff's case information statement indicates she is appealing from the September 15, 2021 order denying defendants' motions for summary judgment without prejudice, and the November 17, 2021 order barring admission of a portion of her expert's intended testimony. She did not, however, address either order in her brief. Because plaintiff made no substantive arguments with respect to these orders, we consider her appeal from these orders waived. "[A]n issue not briefed is deemed waived." Pressler and Verniero, Current N.J. Court Rules,

I.

We derive the following facts and allegations from the record. In January 2019, plaintiff signed a contract to purchase a single-family residence in Marlboro from the Garzones. On January 22, 2019, defendant Greg Suppa, who was doing business as Suppa Home Inspections, inspected the property at plaintiff's request. Suppa's inspection report revealed the presence of "black spots" in the attic, which he identified as potential mold. He suggested plaintiff retain a mold inspector to inspect the home.

On February 4, 2019, plaintiff, concerned by Suppa's report, terminated the contract. Plaintiff alleges that after Evelyn received written cancelation of the contract, she assured plaintiff mold was not present at the home.[2] Plaintiff alleges she was persuaded by Evelyn's assurances to proceed with the contract.

On February 12, 2019, at the request of plaintiff's real estate agent, Hergenrother, a mold detection and remediation specialist acting through his company, Aquelan, inspected the attic of the residence for mold. He did not

cmt. 5 on R. 2:6-2 (2025); Telebright Corp. v. Dir., Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

[2] Because the Garzones share a surname, we refer to them by their first names. We intend no disrespect.

A-2395-21

execute a written contract with plaintiff or her real estate agent and was not paid to perform the inspection.

On February 12, 2019, Hergenrother sent an inspection report to plaintiff by email. The report stated that "[t]here does not appear to be an active mold growth condition in the attic" and, in Hergenrother's opinion, the attic "does not require any mold remediation work." Hergenrother noted Suppa's inspection report contained images of an icing condition on the rafters and sheathing in the attic. He opined the icing was caused by the improper venting of warm moist air from exhaust fans in the bathroom into the attic. The moisture in the vented air, Hergenrother opined, froze when exposed to "severe cold" in the attic. He stated "[t]here is also some residue from the blown[-]in insulation on some of the wood surfaces, which can appear to be mold, which it is not."

Hergenrother opined that "[t]he staining that is evident on the roof sheathing is non[-]organic staining caused by the coating on the roofing nails." He continued, "[t]he owners of the residence have recently installed a new attic fan, there are baffles in the eves, and there are gable vents installed in the attic, all effective measures in mold prevention." Plaintiff alleges she moved forward with purchasing the property based on Hergenrother's mold inspection report.

A-2395-21

On June 18, 2019, the Garzones's real estate attorney emailed plaintiff's real estate attorney, stating the following:

> in an effort[] to be as forthright as possible, since your client's inspector only performed a mold inspection of the attic (and found no mold), my clients on their own went ahead and used the same company to perform a more thorough inspection of the entire home (1st floor, 2nd floor, basement and attic) and again <u>no mold was found</u>. When my clients purchased the home in 2012 as a short sale, they were informed that shortly before the purchase, the homes in the area were out of power for two weeks with the sump pump not being able to function. No mold was ever discovered throughout their time of ownership, but again, the sellers wanted your client to feel comfortable with her purchase and with a clear basis for the history of the home.

This email appears to refer to a June 9, 2019 inspection of the home by Hergenrother.

The sale closed on July 31, 2019. Plaintiff moved into the home in August 2019.

In October 2019, plaintiff discovered mold contamination in the attic, basement, and kitchen of the home. She hired a firm to diagnose and remediate the mold contamination. Plaintiff alleges she paid more than $40,000 to remediate the contamination in the kitchen. She also claims the contamination was so severe that the entire kitchen and possibly more of the first floor will have to be demolished or removed in the future to treat mold behind cabinets,

5

fixtures, and walls, and that mold may also be present inside the ceilings and internal structures of the home.

Plaintiff thereafter became aware of a report from Hergenrother indicating he treated the home for mold after the February 12, 2019 inspection and prior to the closing. The June 24, 2019 report stated:

> [The Garzones] requested a mold inspection of the attic following a repair made where the bathroom exhaust was vented thru (sic) the roof. The roof had been repaired with new shingles around the duct vent from the bathroom . . . . The attic inspection of that area showed the sheathing to be intact. There was no mold growth on the sheathing with only minor non[-]organic staining caused by the roofing nails on the sheathing. In a proactive approach to prevent any future mold growth, the owner agreed to an application of IAQ Shockwave Solution, an antimicrobial solution that eliminates mold growth. There were no other areas of the attic that had any evidence of mold growth, or required any remediation treatment.
>
> [(omission in original).]

In a November 1, 2019 email to plaintiff, Hergenrother stated with respect to the June 24, 2019 inspection, in relevant part:

> When we went to the house[,] the areas affected were due to the bath fan improperly venting into the attic. A leak was created after the vent was patched thru (sic) the roof, not by us. After we located the leak[,] the seller had a qualified roofing company come in to repair the roof.

Plaintiff responded, "[s]o why wasn't this disclosed to me?? You were originally hired by me!"

In his response, Hergenrother denied plaintiff had hired him to conduct the February 12, 2019 inspection, but in the course of doing so, he admitted he found mold in the attic during the February 12, 2019 inspection:

> The owners called me in because there was a small leak on her ceiling in the bathroom. I went in to inspect and we found a small amount of mold on the rafters of the attic, caused by the bath fan not being vented out of the attic. That was repaired and it was vented thru (sic) the roof. We located the location of the leak, which was from where the vent exited the roof. We treated the mold we saw, and the owners had the roof repaired by a roofing company. I didn't miss anything. The roof leaked from where the vent went thru (sic), not installed by us. I only treated for mold. Did you hire me? I don't recall you paying me anything. I am not the home inspector.

Plaintiff responded:

> I have your report from when I asked you to go out in February for me[.] [Y]ou must have gotten in good with Evelyn being you do many jobs for her after that time in February when I ASKED YOU TO INSPECT THE HOME and you never or the homeowner never disclosed any of this to me!
>
> . . . .
>
> It is illegal not to disclose this information to the home buyer and give them the option to walk away which I in fact would have.

7

Plaintiff alleges Hergenrother also admitted during a recorded telephone conversation he found mold in the attic during the February 12, 2019 inspection. Hergenrother later testified he was mistaken when he stated he found mold during the February 12, 2019 inspection. According to Hergenrother, given the passage of time, he forgot that on February 12, 2019, no mold was found in the attic and he applied antimicrobial solution solely as a preventative measure.

On November 18, 2019, plaintiff filed a complaint in the Law Division. She alleged that prior to the closing, the Garzones, Hergenrother, and Aquelan were aware of the presence of mold at the home, failed to disclose that information to her, and made misrepresentations on which she relied when she purchased the home. She sought damages from the Garzones for common law fraud and from Hergenrother and Aquelan for negligence.[3]

---

[3] The complaint also alleged claims against all defendants under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210 (CFA). During oral argument on a motion in the trial court, plaintiff conceded the CFA does not apply to the Garzones. In the March 15, 2022 order, the court granted summary judgment to Hergenrother and Aquelan on plaintiff's CFA claims. However, plaintiff does not raise the CFA claims in her brief and states that, as of the time the summary judgment motion that resulted in the March 15, 2002 order was considered, the only claim pending against Hergenrother and Aquelan was negligence. We therefore deem any arguments with respect to plaintiff's CFA claims waived. Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025); Telebright Corp., 424 N.J. Super. at 393.

Prior to filing the complaint, plaintiff retained a mold remediation expert, Christopher Bravo, who issued a report after inspecting the home. Bravo reported that during an October 31, 2019 inspection, he discovered extensive black mold at the residence, including behind the kitchen sink and cabinets, from a leaking pipe. He opined that "[f]or growth to the degree discovered behind the cabinet within the kitchen to develop considering the leak was a slow leak, the leak would have had to [have] been occurring for several months to reach the amount of damage noted . . . ." He also noted the attic was over-insulated in areas blocking airflow from soffit vents, allowing moisture to become trapped in the attic. Bravo reported his suspicion the roof had ice damming during the previous winter, which would have caused this condition.

Bravo opined that during the February 12, 2019 inspection of the attic, it may have been difficult to visually distinguish materials on the wood to determine if mold was present. However, he opined that even if mold had not started to spread significantly as of February 12, 2019, conditions guaranteeing that significant mold growth would occur were present throughout the attic at that time. Thus, he opined, Hergenrother should have recommended mold remediation services to plaintiff after the February 12, 2019 inspection. Bravo also opined mold existed in the home prior to plaintiff's purchase of the home,

but conceded he could not give an exact date on which mold first appeared in the home, particularly considering Hergenrother's failure to take air samples during his inspections.

Bravo reported that during his inspection he observed what he opined to be evidence of attempts to hide mold in the kitchen, including an access panel cut in the back of the base of a cabinet that had recently been painted over. He also observed a few feet to the right of the affected area that sheetrock had been removed from behind the stove and cabinet and never replaced. He noted that plaintiff did not make those alterations.

Finally, Bravo reported that after moving into the home plaintiff took down a vent in the bedroom and discovered mold around the boot of the vent. His subsequent inspection found mold on the sheetrock around the boots of every vent in the home. He opined the cause of the mold was condensation forming around the vents due to the air conditioning system straining to cool the house because it was only partially functional. Bravo opined that when the mold growth in the vents began is indeterminant but plaintiff informed him the system was only partially functional at the time she purchased the home.

During discovery, plaintiff became aware that on June 9, 2019, the Garzones hired Hergenrother to take air samples in three rooms of the residence

10

to test for mold spores. Neither the Garzones nor Hergenrother shared the fact that testing took place or the test results with plaintiff or her attorney prior to the closing. Plaintiff alleges the tests came back positive for three species of mold spores. Defendants deny the results are indicative of a mold issue in the home, as they show non-concerning levels of mold normally found in the air.

The Garzones moved to bar Bravo's testimony, challenging his qualifications as an expert in mold inspection and remediation and the opinions contained in his report as inadmissible net opinions. The court held an N.J.R.E. 104 hearing on the motion. During his testimony, Bravo admitted he could not identify with certainty when mold began to germinate in plaintiff's home and could opine only that conditions conducive for significant mold growth existed at the home during Hergenrother's February 12, 2019 inspection of the attic.

On November 17, 2021, the trial court issued an oral opinion finding Bravo had the skill, experience, and training qualifying him as an expert in mold inspection and remediation. The court found Bravo did not issue a net opinion with respect to the identification of mold in the residence at the time of his inspection, the germination period of mold, the proper techniques for remediating mold, and the disposal of mold-contaminated materials. However,

A-2395-21

the court found any opinion by Bravo with respect to when the mold found at plaintiff's home began to germinate would be an inadmissible net opinion.

The Garzones, Hergenrother, and Aquelan subsequently moved for summary judgment. They argued that, without expert testimony with respect to when the mold discovered by plaintiff began to germinate, she could not prove elevated levels of mold were present at the home at the time of the closing. Thus, defendants argued, plaintiff could not prove the act of any defendant had been the proximate cause of the mold found in the home months after the closing. Plaintiff opposed the motion and cross-moved for leave to file an amended complaint alleging claims of fraudulent concealment and negligent misrepresentation against the Garzones.

On March 15, 2022, the court issued a written decision granting the motions for summary judgment and denying plaintiff's cross-motion. With respect to plaintiff's negligence claim against Hergenrother and Aquelan, the court found that assuming plaintiff can establish those defendants owed her a duty to disclose Hergenrother's discovery of mold in the attic, treatment for mold in the attic, and the results of air sample tests he took, and that they breached that duty, she would be unable to establish their actions proximately caused her damages. The court reasoned that, in the absence of expert testimony

establishing that the mold discovered months after the closing began to germinate before the closing and that the mold migrated to the kitchen from the attic, she cannot establish the causal link between any act by Hergenrother and the mold later found in her home, which forms the basis of her damage claim. Nor, the court concluded, could plaintiff prove Hergenrother's application of solution in the attic did not effectively kill the mold he discovered.

For the same reasons, the court found the Garzones were entitled to summary judgment on plaintiff's fraud claims. The court reasoned plaintiff would be unable to establish proximate cause in the absence of expert testimony establishing the existence of mold in the home prior to the closing.

The trial court also found plaintiff's proposed amendment to the complaint sought to allege claims that are not sustainable, warranting denial of her motion. The court reasoned that causation was an element of both fraudulent concealment and negligent misrepresentation and could not be proven by plaintiff. Thus, the court concluded, amendment of the complaint would be futile. A March 15, 2022 order memorialized the trial court's decision.

This appeal followed. Plaintiff argues the motion court erred because it overlooked evidence beyond Bravo's opinion on which a jury could determine that mold was present at the home prior to the closing. That evidence included

Hergenrother's admission he found mold in the attic on February 12, 2019, his application of a solution to kill mold on February 12, 2019, the test results for air samples taken prior to the closing, and the physical evidence of concealment of mold observed by Bravo in the kitchen.

Plaintiff also argues the trial court erred when it concluded she could not prove any act of defendants proximately caused her damages because she could not link any act of defendants to the mold she discovered in October 2019. She argues she would not have purchased the home had the Garzones and Hergenrother disclosed Hergenrother's discovery and treatment of mold in the attic on February 12, 2019, the results of the test samples taken on June 9, 2019, or his treatment for mold in the attic. Those omissions, plaintiff argues, were compounded by the written statement of the Garzones's real estate attorney that mold had never been found in the home and the misrepresentations by Evelyn that the home was free of mold.

Plaintiff notes she had previously canceled the contract when Suppa suggested mold might be present in the home. She argues a jury could find that but for the omissions and misrepresentations of defendants, she would not have purchased the home and incurred damages remediating mold in the kitchen,

regardless of whether that mold was present at the time of the closing or caused by mold that was present at the time of the closing.

Plaintiff also argues the trial court overlooked Bravo's opinion that Hergenrother was negligent when, after the February 12, 2019 inspection, he failed to recommend plaintiff undertake mold remediation measures, regardless of whether he discovered mold, given his observation of conditions conducive to significant mold growth in the attic, and when he failed to disclose the results of the air sample tests.  Again, plaintiff argues a jury could find those negligent acts were the proximate cause of harm to her because she would have canceled the contract had that information been revealed to her prior to the closing, regardless of whether the mold later found in her home was present when she purchased the home or caused by the mold that existed at the time of the closing.

## II.

We review a grant of summary judgment de novo, applying the same standard as the trial court.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch

15

v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

The trial court's grant of summary judgment was based on its conclusion plaintiff could not establish the act of any defendant was the proximate cause of her alleged damages. Proximate cause is an element of both fraud and negligence.

To establish a prima facie case of fraud, a plaintiff must show: (1) a material misrepresentation of a presently existing or past fact; (2) the defendant had knowledge or belief it was false; (3) the defendant intended for the plaintiff to rely on it; (4) the plaintiff reasonably relied on the misrepresentation; and (5) the plaintiff suffered damages. Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015). Fraud requires the plaintiff to prove proximate causation by establishing that "defendant's conduct was a cause of damages" and the plaintiff

16

does not have to prove that the defendant's action was the sole cause of damages. Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J. Super. 31, 48 (App. Div. 2000).

Fraud may be established by either affirmative material misrepresentation or through intentional omission of a material defect which is not observable by the reliant party. Dep't of Env'tl Prot. v. Ventron Corp., 94 N.J. 473, 503-04 (1983). "Fraud is not presumed; it must be proved through clear and convincing evidence." Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989) (citing Albright v. Burns, 206 N.J. Super. 625, 636 (App. Div. 1986)).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "Proximate cause connotes not nearness of time or distance, but closeness of causal connection." Cruz-Mendez v. ISU/Ins. Servs. of S.F., 156 N.J. 556, 577 (1999) (quoting Powers v. Standard Oil Co., 98 N.J.L. 730, 732 (Sup. Ct. 1923)). "[T]o be a proximate cause . . . conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial

A-2395-21

factor in producing the particular injury." Showalter v. Barilari, Inc., 312 N.J. Super. 494, 503 (App. Div. 1998) (alterations in original) (quoting Yun v. Ford Motor Co., 276 N.J. Super. 142, 159 (App. Div. 1994) (Baim, J.A.D., concurring and dissenting)).

We agree with the trial court's conclusion that in the absence of expert testimony plaintiff could not prove the act of any defendant was the proximate cause of the mold she discovered in the home in October 2019. Plaintiff has no proof the mold found in the kitchen either existed or began to germinate before she purchased the house. Nor does plaintiff have proof the mold Hergenrother discovered in the attic prior to the closing migrated to the kitchen. We affirm the March 15, 2022 order to the extent it is grants summary judgment to defendants on this theory of causation.

However, plaintiff alleges an alternative theory of causation not dependent on the proximate cause issues addressed by the trial court. Plaintiff argues the failure of the Garzones and Hergenrother to disclose mold was discovered in the attic, treatment was applied for mold in the attic, and mold test results were obtained prior to the closing was the proximate cause of plaintiff purchasing the home and incurring damages when repairing the mold later discovered in the kitchen. Plaintiff alleges had defendants disclosed this

18

information prior to the closing she would have canceled the contract, as she had previously done when Suppa first suggested she have the home inspected for mold. Plaintiff also alleges that in deciding to go forward with the purchase of the home, she relied on misrepresentations by the Garzones and their real estate attorney that mold had never been discovered at the residence.

That theory of causation does not depend on plaintiff proving the mold she discovered in October 2019 was present prior to her purchase of the home or was caused by mold in the attic when she purchased the home. She alleges defendants' omissions and misrepresentations caused her to purchase a home at which either mold was present or recently present and at which conditions conducive to significant mold growth existed. According to plaintiff's theory, had defendants disclosed the mold-related information prior to the closing, she never would have purchased the home and would have never incurred the expenses associated with the significant mold contamination discovered a few months later, regardless of the cause or duration of that mold infestation.

Plaintiff also alleges a negligence claim against Hergenrother and Aquelan for failure to recommend mold remediation services after the February 12, 2019 inspection of the attic, even if Hergenrother did not discover mold during that inspection. Plaintiff's expert opined Hergenrother observed

conditions conducive to significant mold growth in the attic and was negligent in not recommending mold remediation services to plaintiff. The trial court did not exclude that portion of the expert's intended testimony. Plaintiff alleges that had Hergenrother made the recommendation she would have canceled the contract and ultimately never incurred the costs of remediating mold in the kitchen.

Plaintiff proffered sufficient evidence, including her prior cancelation of the contract when an expert suggested mold was present at the home, on which a jury could determine defendants' omissions and misrepresentations, if proven, were the proximate cause of defendant's damages on these theories of causation on a claim of negligence. Plaintiff did not, however, present any clear and convincing evidence that the Garzones engaged in fraud. There is no proof in the record the Garzones made affirmative material misrepresentations or intentional omissions of a presently existing or past fact concerning the mold. At best, the proofs may support theories of negligence and negligence misrepresentation against the Garzones. We therefore affirm the dismissal of the fraud claim against the Garzones.

We, however, reverse the March 15, 2022 order to the extent it grants summary judgment to Hergenrother and Aquelan on plaintiff's claim of

negligence. As discussed above, plaintiff presented sufficient evidence of causation to survive a motion for summary on those claims.

We recognize the unresolved legal question of whether Hergenrother and Aquelan had a duty of care to plaintiff. Those defendants argue they did not have a contractual relationship with plaintiff and owed her no duty to disclose information relating to their inspections or the services they provided the Garzones or to offer her advice. The existence and scope of a duty is a legal question for the court. Est. of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 322 (2013). The record was not sufficiently developed to resolve this issue on appeal. We offer no opinion on this issue, which will have to be resolved by the trial court on remand.

With respect to the trial court's denial of plaintiff's motion for leave to amend the complaint, "Rule 4:9-1 requires that motions for leave to amend be granted liberally." Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456 (1998). We review the grant or denial of a motion for leave to amend for abuse of discretion. Franklin Med. Assocs. v. Newark Pub. Schs., 362 N.J. Super. 494, 506 (App. Div. 2003). "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchs.

21

Mut. Ins. Co., 185 N.J. 490, 501 (2006); <u>see also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 2.2.1 on R. 4:9-1 (2025). Courts are thus "free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law . . . [because] a subsequent motion to dismiss must be granted." <u>Notte</u>, 185 N.J. at 501-02 (quoting <u>Interchange State Bank v. Rinaldi</u>, 303 N.J. Super. 239, 256-57 (App. Div. 1997)).

The trial court denied plaintiff's motion for leave to file an amended complaint based on its finding she would be unable to prove proximate cause for the proposed fraudulent concealment and negligent misrepresentation claims against the Garzones in the proposed amended complaint. Based on our conclusion that plaintiff proffered sufficient evidence on which a jury could find defendants' acts proximity caused her to purchase the home and incur expenses repairing subsequently discovered mold contamination, we vacate the portion of the March 15, 2022 order denying plaintiff's cross-motion.

The trial court shall consider plaintiff's cross-motion anew in light of this opinion. Because we determined plaintiff cannot establish intentional misrepresentations or fraudulent omissions by the Garzones, the proposed amendment to add a fraudulent concealment claim against them would be futile. We offer no view on the outcome of the remainder of the cross-motion.

A-2395-21

We also offer no opinion on the numerous unresolved factual issues remaining in this matter. Primary among those are whether Hergenrother discovered mold during his inspection of the attic, whether the Garzones made negligent misrepresentations to plaintiff, whether the air sample test results were indicative of a mold infestation in the home, whether plaintiff can allege claims of negligence against the Garzones in light of the real estate contract between those parties, and whether plaintiff reasonably relied on any statement of defendants when she elected to proceed with the purchase of the property.

Affirmed in part, reversed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2395-21