SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Gerald Fazio Jr. v. Altice USA** **(A-21-24) (089744)**

**Argued April 28, 2025 -- Decided July 9, 2025**

**FASCIALE, J., writing for a unanimous Court.**

The primary legal question in this appeal is whether defendants Altice USA, Cablevision, Optimum, and Optimum Mobile (collectively, Altice), can rely on evidence of a habit or routine practice to prove that a salesperson emailed plaintiff Gerald Fazio, Jr., a customer service agreement that contained arbitration and opt-out provisions, and, if so, whether such evidence establishes a rebuttable presumption that Altice acted in conformity with that habit or practice when plaintiff purchased his cellular service.

Plaintiff is a person with quadriplegia and has difficulty breathing. He is unable to wear a face mask. In 2019, plaintiff visited an Altice retail store and purchased cellular service. While he was there, plaintiff was not shown any documents that contained arbitration provisions. Instead, a salesperson handed plaintiff a receipt that stated, without any reference to arbitration, "[a] copy of all documents and agreements . . . will be sent electronically to the email address you provided during account creation." Those "documents and agreements" purportedly included the customer service agreement (CSA), which has arbitration provisions. Almost a week after purchasing cellular service, plaintiff bought a phone at an Altice retail store. This time, plaintiff signed a Retail Installment Contract (RIC) while in the store. That document does not mention waiving the right to a jury trial or to sue in court.

In June 2021, during the COVID-19 pandemic, plaintiff went to an Altice retail store to address a problem with his cell phone. The employees denied him access to the store for failing to wear a face mask and called the police. In October 2022, plaintiff filed this complaint, alleging that the Altice store employees discriminated against and harassed him by refusing to accommodate his medical condition and by calling the police, as well as by creating "a spectacle whereby other customers were emboldened to harass [plaintiff] on the basis of his disability." He alleged that Altice violated the New Jersey Law Against Discrimination and sought damages for that violation and for negligent infliction of emotional distress.

1

Altice filed a motion to compel arbitration and dismiss the complaint. It submitted an affidavit from the Senior Director of Business Process Management for retail stores, who certified familiarity with "Altice's and Optimum Mobile's business practices" and generally certified that, after buying cellular service, plaintiff "would have received a copy of the [CSA] by email." Altice also relied on the RIC, which incorporated the terms of the CSA.

The trial judge dismissed the complaint and compelled arbitration. The Appellate Division affirmed. The Court granted plaintiff's petition for certification limited "to the sufficiency of establishing mutual assent through a business's practice of sending a customer service agreement without proving that practice was followed as to the plaintiff." 259 N.J. 364 (2024).

**HELD:** Under N.J.R.E. 406, evidence of a specific, repeated, and regular business habit or practice, whether corroborated or not, would have been admissible to establish a rebuttable presumption that Altice had acted in conformity with that habit or practice. But here, Altice produced insufficient evidence of such habit or practice. And because there is no proof that Altice emailed plaintiff the critical customer service agreement, the Court does not reach whether there exists mutual assent to waive a jury trial and arbitrate the dispute.

1. N.J.R.E. 406(a) governs the use of evidence of habit or routine practice as circumstantial proof of an action. By the express terms of that rule, evidence of a habit or routine practice need not be corroborated. N.J.R.E. 406(a). If sufficiently established, evidence of a habit or routine practice may be utilized to infer that conduct on a specific occasion conformed to such evidence. Before a court may admit evidence of habit, however, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere "tendency" to act in a given manner, but rather, conduct that is "semi-automatic" in nature. The degree of specificity of the habit or routine evidence is crucial to establishing the inference that a business employed a regular practice of addressing a particular kind of situation with a specific type of conduct and the likelihood that it occurred on the occasion at bar. Lack of specificity in defining a habit or routine practice should preclude its admissibility into evidence. (pp. 12-14)

2. Based on the plain text of N.J.R.E. 406, the Court holds, as a general matter, that evidence of a specific, repeated, and regular business habit or practice, whether corroborated or not, is admissible to prove circumstantially that a business acted in conformity with such habit or practice and may give rise to a rebuttable presumption that the business acted in conformity with that regular habit or practice in a particular case. To give rise to the presumption, however, evidence of a routine practice or habit must have the requisite degree of specificity, such as an affidavit that describes a repeated behavioral response to a specific factual stimulus. If such a

2

presumption is successfully raised, it then falls to the plaintiff to demonstrate that there exists a genuine issue of material fact about whether the business conformed to its regular habit or practice in a particular case. The Court reviews the affidavit Altice submitted and finds that it lacks the requisite specificity. (pp. 14-17)

3. Given its holding that Altice failed to establish, through the affidavit it presented, that it was entitled to a rebuttable presumption of having emailed the customer service agreement, the Court does not reach whether there exists mutual assent to arbitrate. Similarly, the Court makes no conclusions here about either the enforceability of the CSA or the adequacy of emailing the CSA as a follow-up to an in-store purchase to purportedly create a valid arbitration agreement. (pp. 17-18)

**REVERSED and REMANDED for trial.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.**

SUPREME COURT OF NEW JERSEY

A-21 September Term 2024

089744

Gerald Fazio Jr.,

Plaintiff-Appellant,

v.

Altice USA, Cablevision,
Optimum, and Optimum
Mobile,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| April 28, 2025 | July 9, 2025 |

Dana Wefer argued the cause for appellant (Law Offices
of Dana Wefer, attorneys; Dana Wefer, on the briefs).

Shalom D. Stone argued the cause for respondents (Stone
Conroy, and Lester Schwab Katz & Dwyer, attorneys;
Shalom D. Stone, Cristen R. Sommers, and Archis A.
Parasharami (Mayer Brown) of the New York, California,
and District of Columbia bars, admitted pro hac vice, and
Daniel E. Jones (Mayer Brown) of the Virginia and
District of Columbia bars, admitted pro hac vice, on the
briefs).

James A. Barry argued the cause for amicus curiae New
Jersey Association for Justice (DeNittis Osefchen Prince,

and The Wright Law Firm, attorneys; William D. Wright, on the brief).

Andrew Dwyer argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (The Dwyer Law Firm, attorneys; Andrew Dwyer, of counsel and on the brief).

Jeffrey S. Jacobson argued the cause for amicus curiae New Jersey Civil Justice Institute (Faegre Drinker Biddle & Reath, and New Jersey Civil Justice Institute, attorneys; Alex R. Daniel, of counsel and on the brief, and Jeffrey S. Jacobson, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, defendant Altice USA, a cell phone provider, maintains that plaintiff Gerald Fazio, Jr., who purchased cellular service and a phone at an Altice retail store, waived his right to file a discrimination lawsuit in court and instead agreed to binding arbitration.

The primary legal question is whether defendants, Altice USA, Cablevision, Optimum, and Optimum Mobile (collectively, Altice), can rely on evidence of a habit or routine practice to prove that a salesperson emailed plaintiff a customer service agreement that contained arbitration and opt-out provisions, and, if so, whether such evidence establishes a rebuttable presumption that Altice acted in conformity with that habit or practice when plaintiff purchased his cellular service.

2

We hold that, under N.J.R.E. 406, evidence of a specific, repeated, and regular business habit or practice, whether corroborated or not, would have been admissible to establish a rebuttable presumption that Altice had acted in conformity with that habit or practice. But here, Altice produced insufficient evidence of such habit or practice. And because there is no proof that Altice emailed plaintiff the critical customer service agreement, we need not reach whether there exists mutual assent to waive a jury trial and arbitrate the dispute.

We reverse the judgment of the Appellate Division, which upheld the dismissal of plaintiff's complaint and compelled arbitration, and we remand for trial.

## I.

We summarize the facts from the joint record submitted by the parties. More than two decades ago, plaintiff became a person with quadriplegia. Since then, he has had significant limitations, including difficulty breathing, which resulted in his inability to wear a face mask.

In 2019, plaintiff visited an Altice retail store and purchased cellular service. While he was there, plaintiff was not shown the customer service agreement or any other document that contained arbitration and opt-out provisions. Instead, a salesperson handed plaintiff a receipt that stated,

3

without any reference to arbitration, "[a] copy of all documents and agreements -- including Terms & Conditions, AutoPay, handset insurance, etc., -- will be sent electronically to the email address you provided during account creation."

Those "documents and agreements" identified in the receipt purportedly included the customer service agreement. A copy of that customer service agreement was submitted as part of the record in this case. It is approximately twenty-one pages long; has thirty-two paragraphs; lists multiple different websites; and incorporates by reference an "Altice Mobile Privacy Policy." The customer service agreement generally provides the terms and conditions of cellular service that plaintiff purchased. Paragraph two of the customer service agreement addresses how one accepts its terms and conditions.

> 2. **Acceptance:** Subscriber [the individual who purchases the cellular service] accepts this Service Agreement in any of the following ways: agreeing in writing, by email, online, in person; paying for the Altice Mobile Service or Device; opening the Device packaging containing a summary and reference to the Service Agreement; or activating or attempting to use the Altice Mobile Service or Device.

As to the arbitration and opt-out provisions, the customer service agreement states in part:

> **THESE TERMS OF SERVICE CONTAIN A BINDING ARBITRATION AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE**

4

**WAIVER OF CLASS ACTIONS AND JURY TRIALS. THE AGREEMENT ALSO CONTAINS PROVISIONS FOR OPTING OUT OF ARBITRATION. PLEASE REVIEW IT CAREFULLY.**

. . . .

25. **Binding Arbitration.** Please read this section carefully. It affects your rights. Any and all disputes arising between You and Altice, including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this arbitration provision. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

o Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

o Claims that arose before this or any prior Service Agreement; and

o Claims that may arise after the termination of this Service Agreement.

. . . .

Resolving Your dispute with Altice through arbitration means You will have a fair hearing before a neutral arbitrator instead of in a court before a judge or jury. **YOU AGREE THAT BY ENTERING INTO THIS SERVICE AGREEMENT, YOU AND ALTICE EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION.**

a. **Opting Out of Arbitration.** IF YOU HAVE BEEN AN EXISTING SUBSCRIBER FOR AT LEAST 30 DAYS BEFORE THE EFFECTIVE DATE OF THIS SERVICE AGREEMENT AND HAVE PREVIOUSLY ENTERED INTO AN ARBITRATION AGREEMENT WITH ALTICE OR A PREDECESSOR COMPANY, THIS OPT OUT PROVISION DOES NOT APPLY TO YOU. IF YOU BECAME A SUBSCRIBER ON OR WITHIN 30 DAYS OF THE EFFECTIVE DATE OF THIS SERVICE AGREEMENT, AND DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY ALTICE IN WRITING WITHIN 30 DAYS OF THE EFFECTIVE DATE OF THIS SERVICE AGREEMENT BY EMAILING US AT NOARBITRATION@ALTICEUSA.COM OR BY MAIL . . . . YOUR WRITTEN NOTIFICATION TO ALTICE MUST INCLUDE YOUR NAME, ADDRESS, AND ALTICE ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH ALTICE THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH ALTICE OR THE DELIVERY OF ALTICE SERVICES TO YOU. OPTING OUT OF THIS ARBITRATION PROVISION HAS NO EFFECT ON ANY OTHER OR FUTURE ARBITRATION AGREEMENTS THAT YOU MAY HAVE WITH ALTICE.

The parties agree that plaintiff was not provided a hard copy of the customer service agreement containing those arbitration provisions in the store and was

6

not sent one in the mail.  They dispute whether anyone emailed plaintiff the customer service agreement.

Almost a week after purchasing the cellular service, plaintiff visited an Altice retail store and bought a Samsung Galaxy S9 cell phone.  This time, a salesperson provided plaintiff with a document entitled "**RETAIL INSTALLMENT CONTRACT/RETAIL INSTALLMENT SALE AGREEMENT/RETAIL INSTALLMENT OBLIGATION/CREDIT SALE CONTRACT**" (RIC), which plaintiff signed while in the store.  That document states in pertinent part:

> YOU, meaning the BUYER . . . agree to pay US, the SELLER . . . according to the terms of this Altice Mobile Retail Installment Contract/Retail Installment Sale Agreement/Retail Installment Obligation/Credit Sale Contract (referred to below as "<u>Agreement</u>").
>
> . . . .
>
> **1.  AGREEMENT.**  THIS AGREEMENT REQUIRES THAT YOU AGREE TO AND MAINTAIN SERVICE WITH ALTICE MOBILE UNDER YOUR SERVICE AGREEMENT.  <u>ALTHOUGH YOUR SERVICE AGREEMENT IS A SEPARATE DOCUMENT</u> . . . THE WAIVERS AND LIMITATIONS OF LIABILITY, DISCLAIMER OF WARRANTIES, <u>ARBITRATION PROVISION AND OTHER PROVISIONS OF YOUR SERVICE AGREEMENT ARE INCORPORATED BY THIS REFERENCE IN THIS AGREEMENT</u>, AND SHALL SURVIVE TERMINATION OF YOUR SERVICE AGREEMENT.

**2. DISPUTES. <u>THIS AGREEMENT IS SUBJECT TO A BINDING ARBITRATION PROVISION THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL TERMS. THIS PROVISION INCLUDES</u> A WAIVER OF CLASS ACTIONS AND <u>PROVISIONS FOR OPTING OUT OF ARBITRATION. A FULL COPY IS CONTAINED IN THE SERVICE AGREEMENT</u> UNDER THE HEADING "BINDING ARBITRATION" <u>WHICH TERMS ARE INCORPORATED BY REFERENCE</u>.**

. . . .

**9. ELECTRONIC ACCESS TO AGREEMENT/ OTHER COMMUNICATIONS.** By signing below, you acknowledge that you have access to Altice Mobile's Website at https://www.alticemobile.com/Legal/privacy, where a copy of this Agreement and related privacy and other communications will be available to you.

[(emphases added).]

The RIC that plaintiff signed did not mention anything about waiving his right to a jury trial or to sue in court.

In June 2021, during the COVID-19 pandemic, plaintiff went to an Altice retail store to address a problem with his cell phone. The employees denied him access to the store for failing to wear a face mask and called the police. In October 2022, plaintiff filed this complaint.

In his complaint, plaintiff alleged that the Altice retail store is a place of public accommodation; the store employees discriminated against him by

8

refusing to accommodate his medical condition and by calling the police; the employees harassed him because of his physical inability to wear a face mask; and the employees "created a spectacle whereby other customers were emboldened to harass [plaintiff] on the basis of his disability." He alleged that Altice violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50, and sought damages for that violation and for negligent infliction of emotional distress.

Altice filed a motion to compel arbitration and dismiss the complaint for failure to state a claim under Rule 4:6-2(a) and (e). Altice submitted an affidavit from Dency Gonzalez, the Senior Director of Business Process Management for retail stores, who certified familiarity with "Altice's and Optimum Mobile's business practices." Gonzalez generally certified that after buying cellular service, plaintiff "would have received a copy of the Customer Service Agreement by email." Plaintiff challenged the probative weight of the Gonzalez affidavit, asserted it was not his burden to show he never received the customer service agreement, and certified that after searching his email account for an email containing the customer service agreement, he "found no emails concerning an arbitration clause." Altice also relied on the RIC, which incorporated the terms of the customer service agreement. The trial judge dismissed the complaint and compelled arbitration.

The Appellate Division affirmed the order that dismissed the complaint and compelled arbitration. The appellate court acknowledged that neither party produced an email forwarding to plaintiff a copy of the customer service agreement. But the Appellate Division found that "the parties' conduct evidenced a binding agreement" because plaintiff utilized his cellular service "uninterrupted for nearly two years."[1]

We granted plaintiff's petition for certification limited "to the sufficiency of establishing mutual assent through a business's practice of sending a customer service agreement without proving that practice was followed as to the plaintiff." 259 N.J. 364 (2024). We also granted the New Jersey Civil Justice Institute (NJCJI), the National Employment Lawyers Association of New Jersey (NELA), and the New Jersey Association for Justice (NJAJ) leave to appear as amici curiae.

## II.

Plaintiff argues primarily that there is no evidence that Altice emailed him the customer service agreement containing the arbitration and opt-out provisions. He essentially contends that the Gonzalez affidavit provides

---

[1] Although the Appellate Division concluded that utilization of cellular service for two years established a "binding agreement," the parties' conduct during those two years is silent as to dispute resolution. Regardless, we granted certification limited to evidence questions related to N.J.R.E. 406.

10

insufficient evidence of Altice's habit or business practice of routinely emailing service agreements, like the one in this case, to customers after the purchase of cellular service. Plaintiff asserts that the RIC he signed when he purchased his cell phone a week after he activated the cellular service does not advise him of his right to a jury trial and that its incorporation by reference of the terms of the customer service agreement is meaningless because there exists no evidence that the customer service agreement itself was emailed to him.

Altice argues that N.J.R.E. 406(a) allows for admission into evidence of routine business practice without case-specific corroboration. It contends that the rule authorizes "admission of evidence of a habit or custom without evidence that the habit or custom was followed in the particular instance." Altice emphasizes that N.J.R.E. 406(a) "is squarely on point and controls here."

NJAJ and NELA argue that the Gonzalez affidavit inadequately establishes Altice's habit or routine practice of emailing customers the service agreement after a customer purchases cellular service like plaintiff did here. They also contend that neither the initial receipt stating that plaintiff would be emailed "documents and agreements" nor the RIC that plaintiff signed a week

11

later said anything about the right to a jury trial or waiver of the right to sue in court.

NJCJI asserts that the Gonzalez affidavit established "standard business practices" by certifying that the "email 'would have been sent.'"

III.

This appeal hinges on a narrow legal question: whether Altice can rely on evidence of a habit or routine practice to prove that a salesperson emailed plaintiff the customer service agreement, and, if so, whether such evidence establishes a rebuttable presumption that Altice acted in conformity with that habit or routine practice when plaintiff purchased his cellular service. We review that legal question de novo. See M.A. v. J.H.M., 260 N.J. 522, 532 (2025).

A.

To answer that question, we turn to our rules of evidence. In particular, "N.J.R.E. 406(a) governs the use of evidence of habit or routine practice as circumstantial proof of an action." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 406 (2025). N.J.R.E. 406 provides:

> (a) Evidence, whether corroborated or not, of habit or routine practice is admissible to prove that on a specific occasion a person or organization acted in conformity with the habit or routine practice.

12

(b) Evidence of specific instances of conduct is admissible to prove habit or routine practice if evidence of a sufficient number of such instances is offered to support a finding of such habit or routine practice.

By its express terms, evidence of a habit or routine practice need not be corroborated. N.J.R.E. 406(a). If sufficiently established, evidence of a habit or routine practice may be utilized to infer that conduct on a specific occasion conformed to such evidence. 1 McCormick on Evidence § 195 at 1316, 1318 (9th ed. 2025).

Habit evidence is particularly well suited for cases involving "reasonably regular and uniform" routine practices of business organizations. McCormick § 195 at 1318. That is especially true when, for example, the organization is large, the organization's nature is complex, and there are "few expectations that there exists direct proof of any one single act." Biunno, Weissbard & Zegas, cmt. 1 on N.J.R.E. 406.

"[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Sharpe v. Bestop, Inc., 158 N.J. 329, 331 (1999) (alteration in original) (quoting Simplex, Inc. v. Diversified Energy Sys., Inc., 847 F.2d 1290, 1293 (7th Cir. 1988)). Thus, "[h]abit evidence depicts, with specificity, a routine practice in a particular situation."

13

Showalter v. Barilari, Inc., 312 N.J. Super. 494, 512 (App. Div. 1998). A habit is a "regular practice of responding to a particular kind of situation with a specific type of conduct." McCormick § 195 at 1314 (footnote omitted); see also Sharpe, 158 N.J. at 330 (quoting State v. Radziwil, 235 N.J. Super. 557, 564 (App. Div. 1989), aff'd o.b., 121 N.J. 527 (1990)). To constitute a habit under N.J.R.E. 406, the act "must be a repeated behavioral response to a specific factual stimulus." Biunno, Weissbard & Zegas, cmt. 2 on N.J.R.E. 406.

The "degree of specificity" of the habit or routine evidence is "crucial" to establishing the inference that a business employed a regular practice of addressing a particular kind of situation with a specific type of conduct "and the likelihood that it occurred on the occasion at bar." Biunno, Weissbard & Zegas, cmt. 2 on N.J.R.E. 406; see also Sharpe, 158 N.J. at 331-32; McCormick § 195 at 1320-21. Lack of specificity in defining a habit or routine practice should preclude its admissibility into evidence. Biunno, Weissbard & Zegas, cmt. 2 on N.J.R.E. 406.

B.

Based on the plain text of N.J.R.E. 406, we hold, as a general matter, that evidence of a specific, repeated, and regular business habit or practice, whether corroborated or not, is admissible to prove circumstantially that a

14

business acted in conformity with such habit or practice and may give rise to a rebuttable presumption that the business acted in conformity with that regular habit or practice in a particular case. To give rise to the presumption, however, evidence of a routine practice or habit must have the requisite degree of specificity, such as an affidavit that describes "a repeated behavioral response to a specific factual stimulus." Biunno, Weissbard & Zegas, cmt. 2 on N.J.R.E. 406. If such a presumption is successfully raised, it then falls to the plaintiff to demonstrate that there exists a genuine issue of material fact about whether the business conformed to its regular habit or practice in a particular case.[2]

Here, that specificity was lacking. To support its claim of routine practice, Altice relied on the Gonzalez affidavit. Gonzalez certified that "I am familiar . . . with Altice's and Optimum Mobile's business practices" but did not identify what those practices were for either Altice or Optimum Mobile. And Gonzalez did not describe how such habit or routine practices were undertaken. The Gonzalez affidavit did not, for example, certify that an email is automatically sent by a computer upon a certain condition or that it is a

---

[2] To ensure the efficient adjudication of such claims, when there exists a genuine issue of material fact about whether the business conformed to its regular habit or practice in a particular case, the trial judge should resolve that fact issue after conducting a hearing and then rule on the merits of the motion to compel arbitration.

15

specific employee's job to send an email after a customer purchases cellular service. Instead, Gonzalez only speculated in conditional terms that "[w]hile placing the orders, plaintiff would have discussed the Customer Service Agreement and any contract terms and conditions for the [cellular] service with a customer service representative," and that "[w]hen plaintiff ordered cellular services" he "would have received a copy of the Customer Service Agreement by email." Gonzalez did not set forth, with specificity, what the customer service representatives routinely discussed with customers. Gonzalez did not list how or when or from whom emails containing customer service agreements were routinely sent. In short, Gonzalez did not set forth what either Altice's or Optimum Mobile's specific business practices were regarding how customers were provided with service agreements.

The "degree of specificity" required to establish a business's habit or routine practice is not a minor detail. Without the requisite quantum of proof, Altice has not established that it maintained a routine business practice of emailing service agreements to customers.

Altice is therefore not entitled to a rebuttable presumption that it acted in accordance with any such practice in this case. In sum, the Gonzalez affidavit did not provide the requisite "degree of specificity" -- nor did it provide the appropriate focus on Altice's actions -- to allow circumstantial proof that an

16

employee or automated system emailed plaintiff the customer service agreement after he purchased cellular service from Altice.

IV.

Altice nevertheless maintains that plaintiff agreed to waive his right to a jury trial and arbitrate his discrimination and negligent infliction of emotional distress claims. Ordinarily, a review of an order compelling arbitration involves an analysis of whether the parties have entered into a valid contract. Our standard of review in that circumstance is well settled.

The enforceability of a contractual arbitration provision is a question of law subject to de novo review. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019). "[T]he fundamental elements of contract formation" are "mutual assent, offer and acceptance, [and] consideration." Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 65 (2024). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014). And "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Ibid. (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). For there to be a meeting of the minds, parties to an arbitration contract must clearly and

17

unambiguously understand the "distinction between resolving a dispute in arbitration and in a judicial forum." Id. at 445.

But here, Altice concedes that no one in this case is arguing that the RIC, which simply incorporated the terms and conditions of the customer service agreement, contains an Atalese-compliant arbitration clause. Indeed, the RIC did not itself clearly and unambiguously explain the "distinction between resolving a dispute in arbitration and in a judicial forum," and so it does not demonstrate mutual assent on its own. See ibid. Instead, Altice argues that "if" Altice were entitled to a presumption of having emailed the customer service agreement based on a "compliant" N.J.R.E. 406 affidavit, then mutual assent "certainly" occurred when plaintiff signed the RIC. Given our holding that Altice failed to establish, through the affidavit it presented, that it was entitled to a rebuttable presumption of having emailed the customer service agreement, we need not reach whether there exists mutual assent to arbitrate. Similarly, we make no conclusions here about either the enforceability of the customer service agreement or the adequacy of emailing the customer service agreement as a follow-up to an in-store purchase to purportedly create a valid arbitration agreement.

V.

For the reasons explained above, we reverse the judgment of the Appellate Division. Altice represented that this appeal can be adjudicated on the existing record and that it did not need discovery to carry its burden of establishing an N.J.R.E. 406 habit or routine practice or its adherence to such habit or practice in this case. And because the parties urged us to decide this appeal without remanding for an opportunity to more fully develop the record at the trial level, we remand solely for trial and not to re-open the motion record.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.

19